ADAM HAM, PLAINTIFF IN ERROR, v. THE STATE OF MISSOURI.

The act of congress passed on the 6th of March, 1820, (3 Stats. at Large, 547,) accepted by an ordinance declaring the assent of the people of Missouri thereto, adopted on the 19th of July, 1820, granted to the State for the use of schools the sixteenth section of every township in the State, which had not been sold or otherwise disposed of.

This expression, "otherwise disposed of," does not include the case of an imperfect title, claimed to be derived from the Spanish governor, which had been rejected by the board of commissioners in 1811.

The claim was confirmed in 1828 so far as to relinquish all the title which the United States then had; but at that time the United States had no title, having granted the land to Missouri in 1820, which they had a right to do.

The proviso in the act of March 3, 1811, which forbade lands claimed before the board of commissioners from being offered for sale until after the decision of congress thereon, did not prevent a donation for schools, and, moreover, contemplated only a temporary suspension for the purposes of investigation.

THIS case was brought up from the supreme court of the State of Missouri, by a writ of error issued under the 25th section of the judiciary act.

It is fully stated in the opinion of the court.

It was argued by *Mr. Geyer*, for the plaintiff in error, no counsel appearing for the defendant.

*Mr. Geyer* made the following points:—

1. The reservation by the act of March 3, 1811, is something more than "a direction" to the officers to refrain from selling the land claimed. It severed the land embraced by the claim from the public domain, and appropriated it to the satisfaction

of the claim in the event of confirmation; being so set apart and appropriated, it was "disposed of," and therefore not granted nor promised to be granted by the act of March 6, 1820.

2. The State did not acquire a complete title to the 16th section by force of the compact, even where the land had not been sold, reserved, appropriated, or otherwise disposed of; in such case it was reserved and appropriated to the use of schools; "but the title to the land being still in the United States, could be passed by the government to any person for any consideration," and in this case was passed by the confirmatory act of May 24, 1828, and the patent deed of the United States of March 25, 1839.

The propositions offered to the convention having been accepted, became obligatory upon the United States; "the compact was complete between the sovereignties," and the United States became bound to grant and convey the lands embraced by the first proposition, but there is no present conveyance, no word of present grant, and, therefore, no complete title vested by the terms of the compact.

The engagement on the part of the United States is executory, precisely as is the obligation to perfect inchoate titles, or to make a final decision thereon, and hold the lands reserved by law to abide the decision. No time is appointed for the fulfilment of the engagement in either case, and in both the title remains in the United States, subject to the legislative power of congress.

3. The second proviso in the confirmatory act, (repeated in the patent,) to which some importance was attached by the supreme court of Missouri in this case, has no effect whatever upon the title of either party. The act and patent, if they have any effect whatever, pass all the title which the United States had or could convey at the date, and no form of conveyance could accomplish more. Neither the confirmatory act nor the patent would prejudice the rights of third persons, nor any title theretofore derived from the United States, by purchase or donation, if the proviso had been omitted; but while the rights and titles of others are not prejudiced or impaired, they are not enlarged or improved. The executory engagement of the 6th of March, 1820, is not executed or converted into a complete title of that date by the saving, in the confirmatory act and patent. If the legal title was not vested in the State by the compact, it remained in the United States until it was vested in the claimants by the confirmatory act and patent, and the grantees are not liable to be indicted and punished for entering upon the land granted, by reason of the proviso.

Mr. Justice DANIEL delivered the opinion of the court.

Upon a writ of error to the supreme court of the State, under the authority of the 25th section of the judiciary act.

The proceedings now under review were founded upon an indictment in the circuit court of the county of St. Francis, against the plaintiff in error, for having committed waste and trespass on the sixteenth section of lands situated in congressional township number thirty-four, range seven east, as being school lands belonging to the inhabitants of the township aforesaid.

Upon this indictment the plaintiff was convicted, and condemned to pay a fine assessed by the jury, of four hundred dollars, together with the costs of the prosecution. From the judgment of the circuit court, the plaintiff in error having taken an appeal to the supreme court of Missouri, by the latter tribunal that judgment was in all things affirmed; the same plaintiff now seeks its reversal here, in virtue of several acts of congress alleged to be applicable to this case.

Upon the trial in the circuit court, the following facts were either established in proof or admitted by the parties :—

1. A joint petition on the part of Jean Batiste Vallé, and the heirs of François Vallé, Jean Batiste Pratte, and St. Geunne Beauvais, presented on the 15th of October, 1800, to Delassus, the lieutenant-governor of upper Louisiana, praying for a grant of two leagues square of land on the River St. François, including the mine, known by the name of Mine à la Motte, and the lands adjacent.

2. An acknowledgment by the lieutenant-governor, dated January 22, 1801, of his want of power to grant a concession of the extent prayed for, and the fact of his having transmitted the petition to the intendant-general, with the expression of an opinion favorable to the grant, and to the character of the applicants.

3. An order by the intendant-general, that the documents presented in behalf of the petitioners should be translated into the Castilian language, and then be laid before the fiscal agent.

4. A plat and survey for 28,224 arpens, or 24,142 acres of land, situated on the River St. Francis, certified by Nathaniel Cook, as deputy surveyor of the district of St. Genevieve, said by him to have been made by virtue of a concession by Delassus to J. B. and François Vallé, Beauvais, and Pratte, on the 22d of January, 1801.

5. The proceedings of the board of commissioners for the examination of land titles, on the 27th of December, 1811, setting forth the claim of Jean Batiste and François Vallé, Jean Batiste Pratte, and St. Geunne Beauvais, for two leagues of land, including the La Motte Mine, founded on the recommendation from Lieutenant-Governor Delassus for a concession, bearing

date on the 22d of January, 1801, and the order of the intendant-general already mentioned, and the rejection of the claim by the commissioners.

6. The first section of an act of congress, approved May 24, 1828, confirming to François Vallé, Jean Batiste Vallé, Jean Batiste Pratte, and St. Geunne Beauvais, their heirs or legal representatives, a tract of land not exceeding two leagues square, situated in the county of Madison in the State of Missouri, commonly known by the name of the Mine la Motte, according to a field-plat and survey made by Nathaniel Cook, deputy surveyor of St. Genevieve, on the 22d day of February, 1806, with a proviso in the said first section, that the confirmation thus granted shall extend only to a relinquishment of title on the part of the United States, nor prejudice the rights of third persons, nor any title heretofore derived from the United States, either by purchase or donation.

7. A plat and survey made by Jenifer Sprigg, deputy-surveyor, in the months of March, 1829, and August, 1830, of the La Motte Mine tract of land, stated to contain 23,728.02 acres of land, confirmed to François Vallé, Jean Batiste Vallé, Jean Batiste Pratte, by an act of congress approved on the 24th of December, 1828.

8. A patent from the President of the United States, bearing date on the 25th of March, 1839, granted under the authority of the act of congress last mentioned, (and in virtue of a title derived from the confirmees,) to Lewis F. Linn and Evariste Pratte, for the La Motte Mine, and the land surrounding the same, containing 23,728.02 acres of land, in conformity with the survey of Sprigg, as certified from the general land-office; this patent, containing literally the proviso in the act of congress limiting the grant to the patentees, to a relinquishment of the title of the United States at the date of the act of congress of 1828.

9. An admission on the part of the State, that all the right, title, and claim of the original proprietors of the Mine la Motte tract of land had regularly passed to and was vested in Thomas Fleming, as fully as those proprietors had or could have had the same.

10. A lease from Thomas Fleming, of the 9th of April, 1849, to Ham, the plaintiff in error, for a portion of the Mine la Motte land.

11. An admission further on the part of the State, that the sixteenth section claimed as school lands, was within the lines of the original survey of the tract made by Nathaniel Cook, and of the other surveys given in evidence.

Upon the trial of the indictment, the circuit court, at the in-

stance of the counsel for the State, instructed the jury, "that the act of the 6th of March, 1820, entitled ' An act to authorize the people of Missouri Territory to form a constitution and state government, &c.,' taken in connection with an ordinance declaring the assent thereto by the people of Missouri, by their representatives assembled in convention on the 19th of July, 1820, operated as a grant by congress to the State of Missouri for the use of schools, of the 16th section in controversy, unless such 16th section had been previously disposed of by government.

. " That, although the land claimed by the proprietors of Mine la Motte was, by the several acts of congress, reserved from sale, and that the survey of said claim includes the 16th section in controversy, yet such reservation is not such disposition of said section by the government, as is within the saving clause of the 6th section of the act of 1820, and cannot operate to prevent the title from vesting in the State, by virtue of said grant."

The defendant in the prosecution prayed of the court the following instructions, which were refused :—

" That if the jury believe the land in question is included within the original grant by the Spanish government, and within the lines of the survey made by N. Cook, in 1806, and within the lines of the lands confirmed by the act of congress to the original grantees and those claiming under them, then this land never was public land, subject or liable to be donated by congress to the State for the use of schools.

" That the several acts of congress reserving section 16 for the support of schools, could only refer to the public lands proper, and could not attach to private claims, which had previous to such donation been claimed by individuals, and reserved by congress to satisfy those claims.

" That the confirmation of the claim by the act of congress of 1828, conferred and gave a superior title to the lands in question, over the title of the State for the use of schools."

Upon the accuracy or inaccuracy of the instructions given by the court at the instance of the State, and of those denied by it upon the prayer of the defendant in the prosecution, the decision of this cause must depend.

It would seem not to admit of rational doubt, that the act of congress, of March 6, 1820, authorizing the people of the Territory of Missouri to form a constitution and state government, taken in connection with the ordinance of the state convention of the 19th of July, 1820, amounted not merely to a grant for the use of schools, of the 16th section of every township of public lands in the Territory, but, further, to a positive condition or mandate, so far as congress possessed the power to impose it, for the dedication of those sections to that object.   The assertion

of the court, then, of the existence and character of such grant, whilst it recognized any proper limitation or qualification imposed thereon, either by previous acts of congress or by the investiture of any rights arising therefrom, can be obnoxious to no just criticism, but was in all respects proper.

Whether or not the lands claimed by the proprietors of the Mine la Motte, so far as they cover a portion of the sixteenth section of township 34, range 7 east, are exempted from the operation of the act of March 6, 1820, and of the ordinance of July 19, 1820, must depend upon the correct interpretation of the previous legislation of congress, and upon the acts and position of the claimants with reference to that legislation.

By the 10th section of the act of congress, approved March 3, 1811, authorizing the President of the United States to offer for sale such portions of the public lands lying in the State of Louisiana as shall have been surveyed under the direction of the 8th section of the same statute, it is provided, that "all such lands, with the exception of section number sixteen, which shall be reserved in each township for the use of schools," (and with the exception, further, of a township of land granted by the 7th section of the same statute for the use of a seminary of learning, and of certain salt-springs and lead-mines,) "shall be offered for sale to the highest bidder, under the direction of the register of the land-office, the receiver of public moneys, and principal deputy-surveyor." In this 10th section is contained a proviso, "that till after the decision of congress thereon, no tract of land shall be offered for sale, the claim to which has been in due time and according to law presented to the recorder of land titles in the district of Louisiana, and filed in his office for the purpose of being investigated by the commissioners appointed to ascertain the rights of persons claiming lands in the Territory of Louisiana."

Upon this 10th section of the act of 1811, and the proviso thereto annexed, is founded the position taken by the plaintiff in error, that the sixteenth section of township 34 did not, and could not, vest in the State of Missouri, in virtue of the act of March 3, 1820, and of the ordinance of July 19 of the same year, so far as that section fell within the proviso. In comparing the enacting part of § 10 of the statute of 1811 with the proviso annexed thereto, it will strike the attention, that the limitation or restriction contained in the proviso has no connection, by its terms, with lands granted or donated for schools, but relates altogether to such lands as it was designed and declared should be sold at public auction to the highest bidder.

Such, certainly, were not the lands appropriated to a specific, ultimate, and permanent purpose, namely, the support of schools.

As to these lands, sales, and every other disposition inconsistent with such dedication, were expressly inhibited. But, putting aside the literal meaning of the 10th section and its proviso, it may well be asked whether the language and objects of the latter, can be made to import any thing beyond a temporary suspension of the sales of the lands intended for sale, for the simple purposes of investigation; and much more, whether the 10th section of the act of 1811, and the proviso thereto, can be interpreted to mean a denial to itself by congress of the right and power to sell or to give, either upon satisfactory evidence of the invalidity of any opposing claim, or upon considerations of public policy, the land embraced within the suspension.

Such an interpretation, as it is not warranted by the language of the acts of congress, seems not to accord either with considerations of justice or policy. Suppose that congress, after the passage of the law of 1811, should become satisfied of the groundless nature of a claim presented to the commissioners, and should be convinced further, not only of the benefits to result from appropriating the subject of that claim to purposes of education, but also of their having pledged that subject to such purposes; it cannot be questioned that the power to reject or disregard an unfounded claim, and to comply with a previous and just obligation, remained in a plenary and unimpaired extent in congress; and that this right and obligation could in no degree be affected by a mere agreement to investigate.

Let it be remembered, too, that the application of those under whom the plaintiff in error deduces his alleged title, was for a simple gratuity, founded on no consideration whatever but the bounty of the donor. The opinion and the action by congress with respect to the rights of the parties to that controversy, seem to have been entirely coincident with the views herein suggested. Under the provision of the act of 1811, the proprietors of the Mine la Motte presented their claim, together with such evidence as they deemed essential to its support, to the tribunal created by law for the investigation of land titles. By this tribunal, the claim of these proprietors was rejected on the 27th of December, 1811. From the period last mentioned until the 24th of May, 1828, an interval of seventeen years, this claim remains dormant or quiescent, when it is confirmed at the date last mentioned.

The nature and effect of this confirmation will presently be considered; but in the interval above mentioned, the government, (the undoubted possessor of the title,) after the lapse of nine years from the rejection by its agent of this slumbering title, by express compact with the State of Missouri, grants to that State, for the use of schools, the sixteenth section of every township in the State which had not been sold " or otherwise disposed of."

Upon recurring to the law of May 24, 1828, it will be borne in mind that the confirmation to the proprietors of the Mine la Motte is extended merely to a relinquishment of the title of the United States at the date of that law, and is declared to have no influence to prejudice the rights of third persons, nor any title heretofore derived from the United States, either by purchase or donation.

It is proper to keep in view this proviso in this confirmation, in order to ascertain its effect, if any, upon the proper meaning of the qualification in the grant to the State of Missouri comprised in the phrase " or otherwise disposed of."

In our construction of the act of congress of March 3, 1811, we have interpreted the proviso to the 10th section of that act as neither declaring nor importing a final and permanent devestiture, or any devestiture whatsoever, of the title of the United States, but as a provision prescribing a temporary arrangement merely for the purposes of investigation, leaving the title still in the government, to be retained or parted with according to the dictates of justice or policy, as these might be developed by such investigation. Nothing is here ordained which is definite in its character. Inquiry is all that is directed. The language and plain import of the 6th section of the act of the 3d of March, 1820, confer a clear and positive and unconditional donation of the sixteenth section in every township ; and, when these have been sold or otherwise disposed of, other and equivalent lands are granted. Sale, necessarily signifying a legal sale by a competent authority, is a disposition, final and irrevocable, of the land. The phrase " or otherwise disposed of" must signify some disposition of the property equally efficient, and equally incompatible with any right in the State, present or potential, as deducible from the act of 1820, and the ordinance of the same year. Upon any other hypothesis, the right to the sixteenth section would attach under the provision of the act of 1820 ; the State would still have the title, and could recover the section specifically, and there would be no necessity for providing for an equivalent for that section.

Under our interpretation of the acts of March 3, 1811, and of May 24, 1828, no title can have passed to the proprietors of the La Motte Mine lands. The reply of the lieutenant-governor, Delassus, to the petition of the applicants for the mine, acknowledges explicitly the absence of all power in that officer to make the grant asked for, and refers those petitioners to the intendant-general, as the only functionary possessing authority to make it. This officer took no further action upon the petition than to order its translation into the Castilian language.

On the 27th of December, 1811, this claim was before the commissioners for the examination of land titles in the State of

Louisiana, and was rejected by them.. From this period of time down to the 24th of May, 1828, no grant from the United States, nor evidences of title from any source, except those already referred to, have been shown by the plaintiff or those under whom he claims. In the mean time, the United States, the undoubted legal owners of the land in controversy, by the act of March 3, 1820, bestow it on the State, as they had full authority so to do, —bestow the specific section, it never having been disposed of within the intent and meaning of the 6th section of the act last mentioned.

The confirmation in 1828, and the patent of the 25th of March, 1839, professing to confer no title but such as remained in the United States at those periods respectively, and the grant of the sixteenth section in township 34, range east, comprised within the survey of the Mine la Motte, having been made seven years anterior to the confirmation, which constitutes the only ground of title in the claimants of the mine, the pretensions of the confirmees to the section in controversy must be regarded as without foundation and utterly null.

The view which this court has taken of the evidence in this cause, and of the law as applicable to that evidence, dispenses with any necessity for an examination *seriatim* of the instructions asked by the plaintiff in error upon the trial of the indictment, and refused by the court. It is sufficient to remark, that the positions assumed in the instructions so prayed for, being incompatible with the law of this case as expounded by this court, we deem those instructions to have been properly refused. It is the opinion of this court, that the decision of the supreme court of the State of Missouri, pronounced in this cause, sustaining that of the circuit court, is correct, and ought to be, as it is hereby, affirmed.

Mr. Justice NELSON. I concur in the judgment of the court upon the ground that, though the 10th section of the act of March 3, 1811, had the effect to prevent the title of Missouri to this land from vesting, until the final decision by congress upon the claim of Vallé and others, yet the act of May 24, 1828, confirming lands to Vallé and others, operated as such final decision, and, by its true construction, excepted out of the confirmation so much of the land as was included in section sixteen, the public surveys of the township having been made before the passage of the last-mentioned act. I do not know that the opinion of the court is intended to go further than this. If it does, I do not assent thereto.

Mr. Justice CURTIS concurred with Mr. Justice Nelson.

Mr. Justice GRIER also concurred with Mr. Justice Nelson.