'(January 30, 1903.)'

## HOLLISTER v. STATE.

(Two cases.)

[71 Pac. 541.]

ACTIONS AGAINST STATE—MUST BE AUTHORIZED—EMINENT DOMAIN—
SCHOOL LANDS—ADMISSION ACT—SPECIFICATIONS OF ERROR.—
Authority to sue the state must be expressed in its constitution or
statutes. Authority to sue this state for the condemnation of state
lands for a public use is granted by section 13 of the act of February
25, 1899 (Sess. Laws 1899, p. 318). The power of eminent do-
main is one of the inalienable rights of sovereignty. Act of Con-
gress approved July 3, 1890, known as the "Idaho Admission
Act," does not prohibit or restrict the right of eminent domain
over the lands granted to the state by said act. Specifications
of insufficiency of evidence to sustain findings of court must be
made in order to have this court examine evidence and pass
upon its sufficiency to sustain the findings.
(Syllabus by the court.)

APPEAL from District Court, Lincoln County.

The facts are set out in the opinion.

John A. Bagley, Attorney General, Frank Martin and Edward A. Walters, for Appellant.

Can an action be maintained against the state in the district court? Plaintiff seeks to condemn for an alleged public use lands belonging to the state of Idaho and granted to said state

by act of Congress of July 3, 1890, for the support of common schools. The first objection is that the action is brought against the state, and it nowhere appears, in the constitution or the statutes, that the state has given its consent to be sued in the district court of the state. "A state is not liable to suit in its own courts or those of the United States or of any other state without its expressed consent"; and its consent must be given either by its constitution or by its legislative enactments. (23 Am. & Eng. Ency. of Law, 1st ed., 83, and notes; Cooley's Constitutional Limitations, 17, and note; *Railroad Co. v. Tennessee,* 101 U. S. 337, 25 L. ed. 960; *Railroad Co. v. Alabama,* 101 U. S. 832, 25 L. ed. 937; *In re Substitution for Senate Bill,* 21 Colo. 69, 39 Pac. 1088; *People v. Niles,* 56 Cal. 401; *Sawyer v. Colgan,* 102 Cal. 292, 36 Pac. 580; *Alpin v. Board of Supervisors,* 73 Mich. 182, 16 Am. St. Rep. 576; *Galbes v. Girard,* 46 Fed. 500; *Lanford v. King,* 1 Mont. 33, 38; *Firl v. Cuthburt,* 2 Mont. 593, 598; *Orleans Nav. Co. v. Schooner Amelia,* 7 Mart. (La.), 571, 12 Am. Dec. 516, and note; *New York v. Dennisno,* 84 N. Y. 272; *Beers v. Arkansas,* 20 How. (U. S.) 527, 5 L. ed. 991; *Ex parte Dunn,* 8 S. C. 207, 231.) Sections 16 and 36 in every township having been granted by Congress to the state for the support of common schools, the same are dedicated for that object. Every disposition inconsistent with such dedication is expressly prohibited. (*Ham v. Missouri,* 18 How. (U. S.) 126, 15 L. ed. 334, 336.) The use in the complaint is not a public use. We look in vain in section 5210 of the Revised Statutes, which enumerates the uses in behalf of which the right of eminent domain may be exercised to find therein the use for which plaintiff seeks to condemn this land. There is no provision in this section whereby the fee, or any easement, in lands may be acquired by an exercise of the right of eminent domain for the laying of pipes or conduits, for the construction of canals, flumes or ditches for the purpose of conveying water to a manufacturing plant, or for providing a site upon which a manufacturing plant may be built. A plant for the manufacturing of electricity is a manufacturing plant or factory. (*Lamborn v. Bell,* 18 Colo. 346, 32 Pac. 989.) The right of eminent domain can only

be exercised by virtue of legislative enactment, and unless so authorized the power is latent and potential merely. (1 Lewis on Eminent Domain, 2d ed., sec. 237, and notes on pp. 562, 563; 7 Am. & Eng. Ency. of Pl. & Pr. 467, 468, par. 2, and note; *Matter of Thomson*, 86 Hun, 405, 33 N. Y. Supp. 467; *Matter of Poughkeepsie Bridge Co.*, 108 N. Y. 483, 15 N. E. 601.) When property is taken for public use, the owner is entitled to its market value for the use to which it may be most advantageously applied and for which it would sell for the highest price in the market. (*King v. Minneapolis Union Ry. Co.*, 32 Minn. 224, 20 N. W. 135; 2 Lewis on Eminent Domain, 2d ed., secs. 478, 479, and notes; *Seattle etc. Ry. Co. v. Murphine*, 4 Wash. 448, 30 Pac. 720 (see last column, p. 722); *San Diego Land etc. Co. v. Neale*, 78 Cal. 63, 20 Pac. 372; *Boom Co. v. Patterson*, 98 U. S. 403, 25 L. ed., 206 (see p. 208, bottom first column); 6 Am. & Eng. Ency. of Law, p. 567, par. 4, and note, and p. 569, par. 2, and note.)

S. H. Hays, for Respondent.

We do not question the principle of law that a state cannot be sued without its consent. Condemnation proceedings are, however, not necessarily suits in the ordinary acceptation of that term, since they are frequently conducted before special tribunals without resort to the courts. (7 Ency. of Pl. & Pr. 467.) Conceding that these proceedings are equivalent to a suit, under our practice we find that the statute has directly authorized the state to be brought into court. Section 5212 of the Revised Statutes provides: "The private property which may be taken under this title includes: . . . . 2. Lands belonging to this territory . . . . not appropriated to some public use." The word "territory" was, by act of the legislature, changed to "state," and this act has been held valid by this court. (*Gilbert v. Moody*, 3 Idaho, 3, 25 Pac. 1092.) The proceedings must, under section 5215 of the Revised Statutes, be brought in the district court, and by section 5228, the provisions of the code relative to civil actions are made applicable and constitute the rules of practice. If there is no special statutory provision for service of summons on the

state, then service may be made on the governor and attorney general. . (*State v. Steele,* 57 Tex. 200; *State v. Cook,* 57 Tex. 205; *Commonwealth v. Railway Co.,* 3 Cush. 25, 47; *Chisholm v. Georgia,* 2 Dall. 419, 469.) The statutes cited give as specific authority to make the state a party to these proceedings as could possibly be given. The statute was passed before our admission to statehood. The territory had power to pass this act. (*Oury v. Goodwin,* 3 Ariz. 255, 26 Pac. 377.) Can school lands be taken under the power of eminent domain? Eminent domain is a paramount governmental power. Though the taking may be by an agent of the state in charge of the public use, the act is none the less an act of the state in the exercise of its sovereign power. "The right of eminent domain belongs to every independent government. It is an incident of sovereignty and requires no constitutional recognition." (*United States v. Jones,* 109 U. S. 513, 3 Sup. Ct. Rep. 346; *Gilmer v. Lime Point,* 18 Cal. 229; *Moran v. Ross,* 79 Cal. 159, 21 Pac. 547.) "The power of eminent domain is one of the inalienable incidents of sovereignty which, treated simply as a question of power, may be exercised in favor of public uses over any and all private and even public property." (*Southern Pac. Ry. v. Railway Co.,* 111 Cal. 221, 43 Pac. 602; Lewis on Eminent Domain, sec. 2; *Parmalee v. Railroad Co.,* 7 Barb. 559 (624); *Brimmer v. Boston,* 103 Mass. 19.) It has been held that the state could exercise the right of eminent domain over the lands of the United States. (*United States v. Chicago,* 7 How. 185 (194); *United States v. Bridge Co.,* 6 McLean, 517, Fed. Cas. No. 16,114.) This being the case, the United States could not, by the terms of its grant to the state, take away the power of eminent domain. (See, also, *Indiana Cent. Ry. v. Indiana,* 3 Ind. 421.) Is the use for which the lands are sought a public use? Section 14, article 1, of the state constitution, which is self-executing, covers this point fully. Section 5210 provides that the right may be exercised in favor of "steam and horse railroads." This will include electric railroads. (*Oregon Ry. Co. v. Ogden,* 7 Utah, 207, 26 Pac. 288.) The question of public use was not submitted to the jury, but was found on by the court. There is no specifica-

tion of the insufficiency of the evidence on this point to sustain the finding and the question is not before this court. It was not necessary to allege in the complaint the refusal of the land board to grant us the right of way desired, and therefore no proof was necessary. Even if it had been, the fact that the board is not authorized by law to make such grant would be a sufficient refusal. (*Balch v. County Commrs.*, 103 Mass. 106.) All of the testimony as to the value, on the part of appellant, was incompetent and should have been stricken out. (*San Diego Co. v. Neale*, 88 Cal. 50, 25 Pac. 977.)

AILSHIE, J.—The plaintiff filed two complaints, the first February 4, 1902, and the second February 7, 1902; the lands described in the two complaints being contiguous, and comprising two and sixty one-hundredths acres of land, lying along the Snake river, and immediately below the Shoshone Falls, in Lincoln county. Plaintiff prayed that the lands be condemned, and the value thereof assessed, and that it be declared a public use, and that such use is as follows: "To furnish electricity for lighting purposes to the unincorporated town of Shoshone, the county seat of Lincoln county, and to the inhabitants thereof; to furnish electric power for pumping water to be used for domestic purposes and for purposes of irrigation by the inhabitants of said town; to construct and operate a railroad from said town of Shoshone to a point on Snake river in the vicinity of section 36, township 17 east, of range 9 south, Boise meridian, said railroad to be operated by means of electric power; to furnish electric power for the drainage of mines, for the working thereof by means of railroads, tramways, hoisting works, or other necessary means to their complete development; and generally to furnish electricity for lighting, transportation, power, and other useful and beneficial purposes necessary to the complete development of the material resources of the state in Lincoln, Blaine, and Cassia counties, as well as in other localities." All the defendants defaulted except the state, which, through the attorney general, demurred. Demurrer was overruled, and the state answered. Upon the trial both actions were consolidated by agreement and order of court, and

a jury was impaneled to assess the damages for the taking of said lands and site. The jury awarded the state $500 in each action, and judgment was entered in accordance therewith, condemning said lands to a public use upon payment by plaintiff of the sum of $1,000 to the state as damages. The state moved for a new trial, which was refused, and from the order denying a new trial and the judgment the state appeals to this court.

The first and second assignments of error are urged against the action of the court in overruling the demurrer and in denying motion for nonsuit. Upon these assignments appellant says: "The action is brought against the state, and it nowhere appears in the constitution or statutes that the state has given its consent to be sued in the district court of the state." Counsel contend that neither the constitution nor the statutes of this state grant or confer any authority to sue the state in a case like the one at bar. On the point urged as to the right to sue the state in any court without its express permission, we are cited to the following authorities: 23 Am. & Eng. Ency. of Law, 83, and notes; Cooley's Constitutional Limitations, 17; *Railroad Co. v. Tennessee,* 101 U. S. 337, 25 L. ed. 973; *In re Substitution for Senate Bill,* 21 Colo. 69, 39 Pac. 1088; *People v. Miles,* 56 Cal. 401; *Sawyer v. Colgan,* 102 Cal. 292, 36 Pac. 580; *Galbes v. Girard* (C. C.), 46 Fed. 500; *Fisk v. Cuthbert,* 2 Mont. 593; *Orleans Nav. Co. v. Schooner Amelia,* 7 Mart. (La.) 571, 12 Am. Dec. 516. Many more authorities are cited sustaining this position. That a people in their collective capacity, exercising the rights, privileges, duties, and obligations of sovereignty, cannot be sued except by their consent, is a principle too well established to require discussion. If the authority to maintain this action cannot be found either in our constitution or statutes, then the action must fail. Section 10 of article 5 of the constitution provides as follows: "The supreme court shall have original jurisdiction to hear claims against the state, but its decision shall be merely recommendatory; no process in the nature of execution shall issue thereon; they shall be reported to the next session of the legislature for its action." This is the only authority in the constitution authorizing an action against the state, and it must be admitted

that this provision is not broad enough to cover this case. Turning to the statutes of 1887, under the title of "Eminent Domain," we find in section 5212 the following language: "The private property which may be taken under this title includes: 2. Lands belonging to the state . . . . not appropriated to some public use." It is true, as urged by counsel for the state, that this statute was passed before the admission of the state and adoption of the constitution, but we do not think it conflicts in any manner with the constitution. This statute alone, however, would not authorize this action; but section 13 of act approved February 25, 1899 (Sess. Laws 1899, p. 381), provides as follows: "The right of way over and upon any and all lands owned or controlled by the state of Idaho is hereby granted to any and all persons for the purpose of constructing and maintaining any ditch, canal, conduit, or other works for the diversion or carrying of water for any beneficial use. Provided, that no property shall be taken under the provisions of this section until a just compensation shall be paid therefor, to be ascertained in the manner prescribed by law. for the taking of private property for a public use." From this latter provision it will be seen that all the provisions of the Code of Civil Procedure of the Revised Statutes of 1887 are made to apply against the state as well as against private parties, and this, to our minds, confers specific authority to maintain an action of this character, and provides all the procedure therefor. Again, it is urged by appellant that the court had no jurisdiction of the subject matter of the action; that sections 4 to 15, inclusive, of the act of Congress of July 3, 1890, known as the "Idaho Admission Act," granting sections 16 and 36 in each township to the state for school purposes, and providing that such lands "shall be disposed of only at public sale, the proceeds to constitute a permanent school fund," prohibited the taking of this property under the claim of eminent domain. Under this act it is claimed that the state cannot authorize any disposition of such lands other than at public sale, and that, therefore, the court had no jurisdiction of an action to condemn any such lands to a public use. In support of this contention the learned counsel for the state cite

27 Am. & Eng. Ency. of Law, 226, and *Ham. v. Missouri*, 18 How. 126, 15 L. ed. 334.

We have examined these authorities, and do not think they support this contention. When Idaho became a state, it at once necessarily assumed the power of eminent domain, one of the inalienable rights of sovereignty; and that right, we take it, may be exercised over all property within its jurisdiction. (*United States v. Jones*, 109 U. S. 513, 3 Sup. Ct. Rep. 346, 27 L. ed. 1015; *Moran v. Ross*, 79 Cal. 159, 21 Pac. 547; Cooley's Constitutional Limitations, 647; *Southern Pac. Ry. v. Railway Co.*, 111 Cal. 221, 43 Pac. 602; Lewis on Eminent Domain, sec. 2; *Parmelee v. Railroad Co.*, 7 Barb. 559; *United States v. Chicago*, 7 How. 185, 12 L. ed. 660.) But even if Congress had the authority in granting these lands to the state, to restrict and prohibit the state in the exercise of the power of eminent domain, we do not think it was intended or attempted in the admission act. It was evidently the purpose of Congress in granting sections 16 and 36 in each township to the state for school purposes to provide that the revenue and income from all such lands should go to the school fund, and that when sold it should be at the highest market price. We cannot believe that Congress meant to admit into the Union a new state, and by that very act throttle the purposes and objects of statehood by placing a prohibition on its internal improvements. To prohibit the state the right of eminent domain over all the school lands granted would lock the wheels of progress, drive capital from our borders, and in many instances necessitate settlers who have taken homes in the arid portions of the state seeking a livelihood elsewhere.

Assignments 3 to 28, inclusive, are to the admission of evidence over the objection of defendant, and the rejection of evidence offered by defendant, and the striking out of other evidence. We do not think the state has been injured by any of the rulings complained of. It is true that there was evidence introduced by the plaintiff as to the value of other locations on Snake river that was immaterial, but it seems to us, in view of the answers given, that it was more prejudicial to

plaintiff than defendant, and we do not think it influenced the jury in any respect to the detriment of the state.

Assignment 29 is taken to instructions 4, 5, 6, 7, and 8, given by the court upon request of plaintiff. We find no error in the giving of said instructions. These instructions gave the law of the case to the jury as laid down in the following authorities, with which we are in accord: *San Diego Land Co. v. Neale*, 78 Cal. 63, 20 Pac. 380; *Monterey Co. v. Cushing*, 83 Cal. 508, 23 Pac. 700; *San Diego Land Co. v. Neale*, 88 Cal. 50, 25 Pac. 977, 11 L. R. A. 604.

Instructions 1 and 2 requested by defendant and refused by the court were fully and clearly covered by the instructions given.

Lastly, the appellant complains of the refusal of the court to grant a new trial on account of insufficiency of evidence, and in particular that the use for which the land is sought to be condemned is not a public use. From the findings in one of the cases we quote the following: "It having been stipulated that the jury should find on the issue as to the value of the premises sought to be taken herein, and that the court should find on the remaining issues, the court therefore finds as follows: 1. That H. L. Hollister is the person in charge of the public use herein. 2. That the property described in the complaint herein is owned by and belongs to the state of Idaho, being a portion of section 36, township 9 south, of range 17 east, Boise meridian, in Lincoln county, state of Idaho, and having been granted to said state by the act of Congress of July 3, 1890. 3. That said premises described in the complaint are sought for a public use, as stated in the complaint; and that the said use, as in said complaint stated, is a public use." Similar findings were made in the other case. No specification of insufficiency of evidence to support these findings has been made. Finding No. 3 is "that said use is a public use." The point urged has, therefore, not been properly saved, but, waiving that question, we have examined the entire record, and are fully satisfied that the use for which the lands are claimed is a public use, as defined by section 5210 of the Revised Statutes, and section 14 of article 1 of the state constitution.

For the foregoing reasons, the judgment and order appealed from are affirmed. No costs awarded.

Sullivan, C. J., and Stockslager, J., concur.