WASHINGTON WATER POWER CO. v. WATERS et al.

(Circuit Court, D. Idaho, N. D.    September 1, 1910.)

1. EMINENT DOMAIN (§ 1*)—AUTHORITY TO CONDEMN.
    Authority to condemn land for public use must be found in the positive law.
    [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 1; Dec. Dig. § 1.*]

2. CONSTITUTIONAL LAW (§ 29*)—EMINENT DOMAIN (§ 66*)—AUTHORITY TO CONDEMN—CONSTITUTION—SELF-EXECUTING PROVISIONS—PURPOSES.
    Const. Idaho art. 1, § 14, provides that lands may be condemned for certain specified uses, not including flowage for electric power plants, and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

then provides that any other use necessary to the complete development of the material resources of the state or the preservation of the health of its inhabitants is declared a public use. *Held*, that the determination of what should be declared to be public uses in addition to those specified in the constitutional provision was not within the exclusive jurisdiction of the Legislature, and hence, in the absence of statute defining the same, the general constitutional provision would be held to be self-executing, and the courts authorized to determine whether a particular use for which land was sought to be condemned was a public use within such provision.

[Ed. Note.—For other cases, see Constitutional Law, Dec. Dig. § 29;* Eminent Domain, Cent. Dig. §§ 165–167; Dec. Dig. § 66.*]

3. EMINENT DOMAIN (§ 35*)—RIGHT TO EXERCISE—PUBLIC SERVICE CORPORATION.

A corporation organized to generate and furnish electric energy was a public service corporation authorized to exercise the right of eminent domain, though it did not render a service directly to the public, but furnished electricity for distribution to the consumers by other persons and corporations.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 80; Dec. Dig. § 35.*]

Complaint by the Washington Water Power Company against Charles Waters and others to condemn land for the flowage of Cœur d'Alene Lake incident to the construction of an electric power plant. On demurrer to plaintiff's third amended complaint. Overruled.

Post, Avery & Higgins and Gray & Knight, for plaintiff.
Kerns & Ryan, for defendant.

DIETRICH, District Judge. The defendant's demurrer to the amended complaint herein was submitted orally at the May term, and at that time the view was intimated that, with the exception of certain objections bearing upon the question of federal jurisdiction, it would be overruled. In the third amended complaint to which the demurrer is now submitted, the jurisdictional defects seem to have been cured, and upon further reflection and consideration I am still inclined to hold to the opinion that in other respects the objections are not well taken, and that, therefore, the jurisdictional facts being sufficiently alleged, the demurrer should be denied.

The principal points urged are involved in a case between the same parties, now pending upon appeal from the District Court of the Eighth Judicial District of the state, in the Supreme Court, and through the kindness of counsel I have had the benefit of the elaborate printed briefs prepared in support of the argument to be made in that appeal. The first objection made by the defendants is that the plaintiff cannot maintain the action, which is a proceeding in eminent domain for the condemnation of lands necessarily flooded by the raising of the waters in Cœur d'Alene Lake by the plaintiff for the purpose of generating electrical energy to be used for power and lighting purposes, because the right of eminent domain does not exist except by express enactment, and there is no provision in the laws of the state of Idaho authorizing the condemnation of private property for the purpose of generating power.

[1] It is not controverted that authority to condemn must be found in the positive law, and I think it must further be conceded that while the Legislature has made general provision for the mode or manner of condemning, and has expressly specified a number of purposes for which private property may be condemned for public use, the purpose or use under consideration has not anywhere been expressly designated or referred to.

[2] While unquestionably, therefore, adequate provision for procedure may be found in the statutes, if the right to proceed exists, that right, if any there be, must be sought for in the Constitution, and not in the statutes of the state. By section 14 of article 1 of the Constitution, it is provided that:

"The necessary use of lands for the construction of reservoirs, or storage basins, for the purposes of irrigation, or for rights of way for the construction of canals, ditches, flumes or pipes, to convey water to the place of use, for any useful, beneficial or necessary purpose or for drainage; or for the drainage of mines, or the working thereof, by means of roads, railroads, tramways, cuts, tunnels, shafts, hoisting works, dumps or other necessary means to their complete development, or any other use necessary to the complete development of the material resources of the state, or the preservation of the health of its inhabitants, is hereby declared to be a public use, and subject to the regulation and control of the state. Private property may be taken for a public use, but not until a just compensation, to be ascertained in a manner prescribed by law, shall be paid therefor."

It will be noted that here there is no express inclusion of a use for power purposes, but the plaintiff relies particularly and exclusively upon the clause which provides that:

"*Any other use necessary to the complete development of the material resources of the State, or the preservation of the health of its inhabitants, is hereby declared to be a public use.*"

In this view, the controversy is reduced to substantially a single question, namely, whether or not under this general clause, in the absence of an expression of legislative will, the judicial department is authorized to determine whether or not a given use is generally or under the particular circumstances of the case, "necessary to the complete development of the material resources of the state, or the preservation of the health of its inhabitants." It is the position of the plaintiff that such power is conferred upon the courts, and, upon the other hand, the defendants contend that it is exclusively within the province of the legislative department to determine specifically what uses are necessary to the development of the state, or to the health of its inhabitants; in other words, that the clause is to be construed as a delegation of authority, not to the courts, but to the Legislature.

While the question is not entirely free from doubt, my first impression was, and my view still is, that, to give the constitutional declaration effect, it was necessary for the Legislature only to prescribe the requisite judicial procedure, which it is thought is amply provided for in the general statutes pertaining to proceedings in eminent domain. As will be noted, it is declared by the Constitution that any use "necessary to the development of the material resources of the state, or the preservation of the health of its inhabitants," is a public use, and to this statement is appended the further declaration that

"private property may be taken for a public use, but not until a just compensation, to be ascertained in a manner prescribed by law, shall be paid therefor." It is well understood that the power of eminent domain is an incident of sovereignty, and may therefore be exercised either by the federal government, or by a state, by virtue of its sovereignty. In the absence of constitutional limitations, the authority to declare for what purposes and under what circumstances and in what manner the power may be exercised rests in the Legislature. However, the people, the primary source of all power, instead of leaving such authority to the unrestricted discretion of their representatives in the Legislature, may express their will in the paramount law, the Constitution, and it may not be doubted that their will so expressed directly is quite as effective as if, through representatives, it were expressed indirectly in legislative enactment. The statutes of the state pertaining to the exercise of the right of eminent domain are found under Title 7 of the Revised Codes of Idaho, commencing with section 5210, which prescribes in some detail the uses in behalf of which the right of eminent domain may be exercised. Sections 5211 and 5212 classify the estates and rights and private property which may be taken for public uses. Section 5213 provides that, before property can be taken, it must appear that the use to which it is to be applied is one authorized by law, and that the taking for such purpose is necessary. Section 5214 provides that, "in all cases where land is required for public use, the state or its agents in charge of such use may survey and locate the same." Sections from 5215 to 5229, inclusive, prescribe in full the procedure to be followed where it is sought to expropriate property for public use, including the ascertainment of the "just compensation" to be paid as a condition precedent to the right to take. It may not be doubted that the declarations contained in the Constitution are at least of equal dignity with those contained in the statute, and are quite as effective as they would be if they had been made by the Legislature instead of directly by the people. That being true, and the Legislature having provided the judicial procedure for condemning property for a public use, it is clear, for instance, that if from section 5210 of the statutes which, as already stated, specifically designates in detail a large number of purposes in behalf of which the right of eminent domain may be exercised, there were omitted all references to the "use of lands for the construction of reservoirs, or storage basins for the purposes of irrigation," the right and power to condemn for such purposes would still be complete because by the fundamental law of the state such a purpose is expressly declared to be a public use, and by general statutory law the mode and method of ascertaining the just compensation and of condemning property for public use has been prescribed. There is nothing left to be done. Taking the Constitution and the statutes together, the law is clear, comprehensive, and complete. The fact that in section 5210 the Legislature has substantially re-enacted the declaration of the Constitution to the effect that the use of lands for the construction of reservoirs, etc., is a public use, is unimportant, and does not operate to enlarge or in any wise modify the right of eminent domain; in other words, what by the terms of the Constitution is declared to be a public use is such a use quite as fully before

as after the Legislature speaks. To the extent of establishing the nature of the use, therefore, the Constitution must be held to be self-executing, and the nature of such a use is not in any wise affected by an affirmative or a negative declaration of the Legislature, or by its silence.

Proceeding a step farther, suppose, for the purpose of illustration, that the general clause which we have been considering were not found in the Constitution, but was found appended to and a part of section 5210 of the Revised Codes. In that case it would not be seriously controverted that the language, though general, would be sufficient to invest the courts with power to determine upon judicial inquiry whether or not any particular use, for which it is sought to exappropriate private property, is necessary to the development of the material resources of the state, or to the preservation of the health of its inhabitants. But, if the clause would have such virtue as a statutory enactment, is there any good reason for denying to it the same effect as a provision of the Constitution? True, it is possible to assume that the people in adopting the Constitution intended to confer the authority upon the Legislature, and not upon the courts, but there is nothing in the instrument reasonably requiring such a construction. The clause is co-ordinated with other clauses which clearly and specifically and positively define certain public uses as not to leave anything for the Legislature to do, and, if it was intended that the general provision should not become operative until it should be amplified and rendered specific by the Legislature, it is strange that such intention was not expressed or intimated by some appropriate phraseology. There is no inherent difficulty in authorizing the courts to perform the function. It is not extrajudicial in its nature, and is closely akin to inquiries which the courts are ordinarily under the necessity of making when the right to condemn is put in issue. We are without any evidence that it was thought by those who formulated the Constitution that the Legislature was more competent or was more likely to reach a just conclusion than the courts; nor does such a view generally prevail. Upon the other hand, we have in the state of Washington evidence of the existence of a contrary opinion, for there we find embodied in the Constitution of the state the declaration that:

"Whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question and determined as such without regard to any legislative assertion that the use is public." Section 16, art. 1, Const. Wash. 1889.

Moreover, if it be true that where the Constitution of a state is wholly silent upon the subject, the power of eminent domain rests entirely with the Legislature, section 14 of article 1 of the Constitution of Idaho, in so far as it defines what are public uses, must be construed not as a delegation of but as a limitation upon the power of the Legislature. Without any previous constitutional authorization, the Legislature could doubtless declare the uses mentioned in section 14 to be public uses and the only effect of the constitutional provision is to withdraw from the Legislature the power to declare

that such uses are not of a public nature. In this view the contention of the defendant would render the clause under consideration wholly superfluous for under his theory it is ineffective until the Legislature sees fit to act, and the power of the Legislature to act is no whit greater under the provision than it would be were the Constitution silent upon the subject.

[3] While the question does not seem to be entirely foreclosed by the decisions of the Supreme Court of the state, in them are to be found certain expressions which, to say the least, strongly tend to support the conclusion here reached. Hollister v. State, 9 Idaho, 8, 71 Pac. 541; Potlatch Lumber Company v. Peterson, 12 Idaho, 769, 88 Pac. 426, 118 Am. St. Rep. 233; Portneuf Irrigation Company v. Budge, 16 Idaho, 116, 100 Pac. 1046. In Potlatch Lumber Company v. Peterson the opinion closes with this language:

"And if, under the provisions of said section 14, art. 1, of the Constitution, the power of eminent domain may be exercised when 'necessary to the complete development of the material resources of the state,' and the lumbering interest is one of the material resources of the state, and that resource cannot be completely developed without the exercise of the power of eminent domain, then that power may be lawfully exercised. The Legislature cannot annul that provision of the Constitution by legislative enactment. The timber interest of our state is one of the great material resources of the state, and it is stated in said section 14 of the Constitution as follows: 'The necessary use of lands * * * to the complete development of the material resources of the state * * * is hereby declared to be a public use.' But it is contended by counsel that said provision is not self-executing. We may concede that contention. But the Legislature has prescribed the procedure for subjecting land to a public use or for exercising the right of eminent domain. Thus by legislative enactment that provision of the Constitution is made effective. The people in this Constitution have declared that the necessary use of lands to the complete development of the material resources of the state is a 'public use,' and the Legislature has provided the procedure to subject such lands to that use."

In considering the question, I have found little assistance in resorting to the Constitutions and the laws and judicial decisions in other jurisdictions, for the reason that there has come under my observation no constitutional provision similar to the one under consideration, and, in the view which I have taken, the entire question turns upon the meaning and effect to be given to this provision.

The further question is raised that the plaintiff is not a public service corporation, the point being that it does not render a service directly to the public, but in the main furnishes power and electricity for distribution to the consumer by other persons and corporations. I do not deem it essential to an understanding of the ruling that the facts be here stated, or that the principle of law be discussed at length. The objection is I think not well taken. Farnhan on Waters, p. 2142; Hollister v. State, 9 Idaho, 8, 71 Pac. 541; Rockingham County Light & Power Company v. Hobbs, 72 N. H. 531, 58 Atl. 46, 66 L. R. A. 581; State v. Superior Court, 52 Wash. 196, 100 Pac. 317, 21 L. R. A. (N. S.) 448; Jones v. North Georgia Electric Company, 125 Ga. 618, 54 S. E. 85; Helena Power Transmission Company v. Spratt, 35 Mont. 108, 88 Pac. 773, 8 L. R. A. (N. S.) 567, s. c. 37 Mont. 60, 94 Pac. 631.

Certain other questions are presented, but they cannot in my opinion be properly considered at this time. They may become important when the facts are fully disclosed.