HELENA POWER TRANSMISSION CO., RESPONDENT, *v.* SPRATT ET AL., APPELLANTS.

(No. 2,348.)

(Submitted January 14, 1907.  Decided February 5, 1907.)

(88 Pac. 773.)

*Eminent Domain—Foreign Corporations—Electric Power Plants —Public Use—Irrigation.*

Eminent Domain—Electric Power Plants—Public Use—Irrigation.
  1.  *Held,* that the taking of land for the purpose of flooding it, rendered necessary by the construction of a dam for generating electric power, to be sold to industrial enterprises and to the public generally, the power also to be utilized for pumping water upon arid lands, is for such a public use as will support the right to acquire the land by condemnation.

Same—Foreign Corporations—Powers.
  2.  A foreign corporation, authorized by the laws of the state in which it is organized, and by its charter, to build a dam across the Missouri river in Montana, and maintain and operate an electric power plant in connection therewith, is neither by the Constitution nor laws of this state clothed with the right of eminent domain.

*Appeal from District Court, Lewis and Clark County; Henry C. Smith, Judge.*

ACTION by the Helena Power Transmission Company against Augustus N. Spratt and others, for the condemnation and appropriation of land. From a judgment in favor of plaintiff, defendants appeal. Reversed, and remanded with directions to dismiss the proceedings as to appealing defendants.

*Mr. John B. Clayberg,* and *Mr. M. S. Gunn,* for Appellants.

The court erred in holding that the use for which respondent sought to condemn and appropriate the lands, property and rights of these appellants set forth in the complaint, was and is public use. What is a public use? The rule for determining that question is, that in order for a public use to exist, the public generally, or such of it as may desire, must have the unqualified and unquestioned right to the use upon demand or application, and be able to enforce such right, and that without the discretion or will of the person or corporation in charge thereof. Another well-known principle seems to be that the use by and for the public must be clearly distinct from any mere private use. Thus the use for public and private purposes must not be intermingled in the same enterprise. One cannot take another's property for any public use, no matter how plain such use may be, if included with that use is one purely of a private nature. If the right to the use by the public is left to the determination of the party seeking condemnation, or if such party may in his discretion prevent the public from the entire use of the enterprise, if desired by the public, it is not a public use.

To determine the character of the plant as intended by respondent, we must examine the certificate of incorporation, which has been offered in evidence. Respondent is bound by its statements made in such certificate as to the objects of its incorporation, and the pursuit of any other object or business would

be clearly *ultra vires* and beyond respondent's power.   An examination of the certificate discloses that none of the .corporate purposes or objects are purely public in their .nature, they all being broad enough to be exercised either for a public purpose or for a pure private use.   If there is any public purposes stated in the certificate of incorporation of respondent, they are so intermingled and interwoven with private purposes and uses as to render separation of such purposes impossible, and under such conditions courts will not allow the exercise of the right of eminent domain.

Under a charter like the one plaintiff has presented, the power of eminent domain cannot be exercised.   (*Fallsburg Power etc. Co.* v. *Alexander,* 101 Va. 98, 99 Am. St. Rep. 855, 43 S. E. 194, 61 L. R. A. 129; *In re Barre Water Co.,* 62 Vt. 27, 20 Atl. 109, 9 L. R. A. 195; *Avery* v. *Vermont Electric Co.,* 75 Vt. 235, 98 Am. St. Rep. 818, 54 Atl. 179, 59 L. R. A. 817; *In re Eureka Basin Warehouse Co.,* 96 N. Y. 42; *Berrien Springs Water Co.* v. *Berrien Circuit Judge,* 133 Mich. 48, 103 Am. St. Rep. 438, 94 N. W. 379; *Brown* v. *Gerald,* 100 Me. 351, 61 Atl. 785; *State* v. *White River Power Co.,* 39 Wash. 648, 82 Pac. 150, 2 L. R. A., N. S., 842; *State* v. *Superior Court,* 42 Wash. 660, 85 Pac. 666; *Louisiana Nav. Co.* v. *Doullut,* 114 La. 906, 38 South. 613; *Healy Lumber Co.* v. *Morris,* 33 Wash. 490, 99 Am. St. Rep. 964, 74 Pac. 681, 63 L. R. A. 820; *Gaylord* v. *Sanitary Dist. of Chicago,* 204 Ill. 576, 98 Am. St. Rep. 235, 68 N. E. 522; *In re Rhode Island Ry. Co.,* 22 R. I. 457, 48 Atl. 591, 52 L. R. A. 879; *Tyler* v. *Beacher,* 44 Vt. 648, 8 Am. Rep. 398; *Board of Health* v. *Van Hoesen,* 87 Mich. 533, 49 N. W. 894, 14 L. R. A. 114.)

The court erred in holding that the exercise of the power of eminent domain had been delegated to and could be exercised by the respondent.   Confessedly, respondent is a foreign corporation.   It has complied with the laws of Montana relative to foreign corporations, and thereby is authorized to do business in the state of Montana.   The exercise of the power of eminent domain is not the transaction of any business within the meaning of the statute of Montana, relative to foreign corporations.

.  Eminent domain is the sovereign power over private property. It rests in the state for all public purposes and uses therein. It is inherent in the state government without any provision in the Constitution relating thereto. It can alone be exercised by the state, except when the state has by express authority del‑egated the right to a private person or private corporation. The right to the exercise of this power cannot rest upon implica‑tion, because sovereign power never passes from the state by implication, but only by express grant. Nor does the mere fact that a corporation should find it impossible otherwise to carry out the purposes for which it was organized give it the right to exercise this power. No presumption can be indulged that it has been delegated, and statutes granting its exercise are strictly construed. (*Rensselear etc. R. R. Co.* v. *Davis,* 43 N. Y. 146; *Ligare* v. *City of Chicago,* 139 Ill. 46, 32 Am. St. Rep. 179, 28 N. E. 934; *Illinois State Trust Co.* v. *St. Louis etc. R. R. Co.,* 208 Ill. 419, 70 N. E. 357; *Harvey* v. *Aurora etc. R. R. Co.,* 174 Ill. 295, 51 N. E. 163; *Currier* v. *Marietta etc. R. R. Co.,* 11 Ohio St. 228.)

A foreign corporation is not entitled, on the principle of com‑ity, to exercise the right of eminent domain. (*In re Poughkeep‑sie Bridge Co.,* 108 N. Y. 483, 15 N. E. 601; Cooley's Constitu‑tional Limitations, c. 15, p. 763; Thompson on Corporations, sec. 7932; 15 Cyc. 573; *Chestatee Pyrites Co.* v. *Cavenders Creek M. Co.,* 119 Ga. 354, 100 Am. St. Rep. 174, 46 S. E. 422; *Saunders* v. *Bluefield Water Works etc. Co.,* 58 Fed. 133.)

Our laws upon eminent domain are found in the Code of Civil Procedure, sections 2210, et seq., as amended by the Laws of 1899, page 125. Section 2210 defines eminent domain and then provides that: "This right may be exercised in the manner provided in this title." This does not appoint any agency for its exercise, but simply provides the manner in which it may be exercised. Not by whom. And we do not find anywhere in the Act of eminent domain any reference to foreign corporations, or any delegation of power to them. Neither do we find any delegation of the power to foreign corporations in our Act rel‑

ative to such corporations. The Act relative to foreign corporations now in force (Laws, 1901, p. 150) simply gives to foreign corporations the right to do business in this state upon compliance with the provisions of that Act. It does not delegate or give to foreign corporations any power as such, but simply permits the corporation to do business in the state.

If a foreign corporation could exercise the power of eminent domain, it might with equal truth be said that such corporation might exercise any of the other sovereign powers of the state. The sovereign power of a state rests in the state exclusively and absolutely, yet, the representative of the state—that is, the legislature—may delegate the exercise of this power to individuals or corporations, but the delegation must be clear and specific and not rest upon implication or the tortuous construction of simple words of our statutes.

*Messrs. Wallace & Donnelly,* for Respondent.

Section 15 of Article III of the state Constitution provides that, "the use of all water now appropriated, or that may hereafter be appropriated, for sale, rental, distribution or other beneficial use, and a right of way over the lands of others for all ditches, drains, flumes, canals and aqueducts necessarily used in connection therewith, as well as the sites for reservoirs necessary for collecting and storing the same, shall be held to be a public use." This court has had frequent occasion to refer to and apply this provision; and has held that the power of eminent domain might be exercised in aid of the uses thus characterized as "public." (*Butte etc. Ry. Co.* v. *Mutual U. Ry. Co.,* 16 Mont. 529, 50 Am. St. Rep. 508, 41 Pac. 232, 31 L. R. A. 298; *Ellinghouse* v. *Taylor,* 19 Mont. 462, 48 Pac. 757; *Smith* v. *Denniff,* 24 Mont. 22, 81 Am. St. Rep. 408, 60 Pac. 398, 50 L. R. A. 741; *City of Helena* v. *Rogan,* 26 Mont. 475, 68 Pac. 798; *Bullerdick* v. *Germsmeyer,* 32 Mont. 554, 81 Pac. 334.)

The constitutional and statutory declarations as to what is a public use are entitled to the very highest respect, and courts will not lightly disregard them; but unless the court was satis-

fied that the use was public, it was as much its duty to ignore this constitutional declaration of what is a public use, as it would have been to ignore a like declaration in a statute.

In states situated as is Montana, eminent domain may be exercised in aid of enterprises which do not meet a single one of the conditions of that test; and though but a single individual were to have the direct and immediate use of the property taken, the use may nevertheless be "public." (*Fallbrook Irr. Dist.* v. *Bradley*, 164 U. S. 112, 17 Sup. Ct. 56, 41 L. Ed. 369; *Clark* v. *Nash*, 198 U. S. 361, 25 Sup. Ct. 676, 49 L. Ed. 1085; *Strickley* v. *Highland Boy Gold Min. Co.*, 200 U. S. 527, 26 Sup. Ct. 301, 50 L. Ed. 581.)

While the question, what is a public use, is a judicial one, "if there is a legislative declaration that the use is a public one, the courts will hold it to be such unless it manifestly has no tendency to promote such a use. There is a presumption in favor of the public use, arising from its having been authorized by the legislature." (15 Cyc. 581; *United States* v. *Gettysburg etc. Ry. Co.*, 160 U. S. 668, 16 Sup. Ct. 427, 40 L. Ed. 576; McGehee on Due Process of Law, 256, 680; Am. Doctrine of Const. Law, 7 Harvard Law Review, 148.)

The public character of electric power plants and the right to exercise eminent domain in aid of them has been distinctly recognized and affirmed in New Hampshire, Colorado, Utah, Georgia, North Carolina, Minnesota and Idaho. (*Rockingham Light etc. Co.* v. *Hobbs*, 72 N. H. 531, 58 Atl. 46, 66 L. R. A. 581; *Denver Power etc. Co.* v. *Colorado etc. Ry. Co.*, 30 Colo. 204, 69 Pac. 568, 60 L. R. A. 383; *Salt Lake City* v. *Salt Lake City W. etc. Co.*, 25 Utah, 456, 71 Pac. 1071; *Jones* v. *North Georgia Electric Co.*, 125 Ga. 618, 54 S. E. 85; *Brown* v. *Weaver Power Co.*, 140 N. C. 333, 3 L. R. A., N. S., 912, 52 S. E. 954; *Minnesota Canal etc. Co.* v. *Koochiching*, 97 Minn. 429, 107 N. W. 413; *Hollister* v. *State*, 9 Idaho, 8, 71 Pac. 541.)

The courts of Vermont, Maine and Michigan, on the other hand—states whose local conditions are utterly unlike our own, and whose laws and public policy on questions cognate with this

one are utterly unlike ours—have held to the contrary; and this court has now to say whether it will follow the doctrines announced by these three courts, or reject them in favor of the broader views for which we are contending, which have such numerous and weighty considerations to support them, and which are perfectly consistent with the rights of private property.

In this state, by section 526 of the Civil Code, specific authority is given to a corporation to exercise the power of eminent domain; and, as if to guard against the limitation which counsel seek to read into the statute, it is further provided, in section 563, that the provisions of section 526, with other sections, apply "to every corporation." In the following cases statutes conferring the power of eminent domain upon every corporation, or "any" corporation, have been held to bestow it upon foreign as well as domestic corporations: *New York etc. Ry. Co.* v. *Welsh,* 143 N. Y. 411, 42 Am. St. Rep. 734, 38 N. E. 378; *In re Marks,* 6 N. Y. Supp. 105, 53 Hun, 633; *Dodge* v. *Council Bluffs,* 57 Iowa, 560, 10 N. W. 886. See, also, *Southern etc. Bridge Co.* v. *Stone,* 174 Mo. 1, 73 S. W. 453, 63 L. R. A. 301; *Santa Clara Academy* v. *Sullivan,* 116 Ill. 375, 6 N. E. 189, 56 Am. Rep. 776; *Farmers' Loan etc. Co.* v. *Lake St. etc. Ry. Co.,* 173 Ill. 439, 51 N. E. 55; *Barnes* v. *Suddard,* 117 Ill. 237, 7 N. E. 477; *Stevens* v. *Pratt,* 101 Ill. 217; *Gray* v. *St. Louis etc. Ry. Co.,* 81 Mo. 126; *St. Louis etc. Ry. Co.* v. *Lewright,* 113 Mo. 660, 21 S. W. 210.

*Messrs. Carpenter, Day & Carpenter,* of Counsel, for Respondent.

The rule stated by counsel for appellants for determining what a public use is has not been adopted by all of the authorities, but has been repudiated in most emphatic terms by the courts of most of the states, including the supreme court of the United States and of this state. Even Mr. Lewis, in his work on Eminent Domain, who is chiefly responsible for the attempt to promulgate the rule given by counsel, is forced to admit that

from the earliest times it has been the practice to permit the erection of dams for water-power, and to provide for a statutory adjustment of the damages to property overflowed. (Lewis on Eminent Domain, 2d ed., sec 178, citing Acts of 8 Anne, 1714, and 13 Anne, 1719; *Boston & Roxbury Mill. Corp.* v. *Newman,* 12 Pick. 467, 23 Am. Dec. 622; *Scudder* v. *Trenton Del. Falls Co.,* 1 N. J. Eq. 694, 728, 23 Am. Dec. 756; *Olmstead* v. *Camp,* 33 Conn. 532, 551, 89 Am. Dec. 221; *Todd* v. *Austin,* 34 Conn. 78.) The taking of land for water-power for running any kind of mills or machinery is held to be for a public use, in Indiana, New Hampshire, Iowa, Kansas, Maine, Minnesota, Nebraska and Wisconsin, (Lewis on Eminent Domain, sec. 180.) That the conversion of this power into electricity, which is transmitted long distances, then applied to useful purposes, does not change the character of the use from a public to a private one, has been very clearly laid down in the recent case of *Rockingham County Light etc. Co.* v. *Hobbs,* 72 N. H. 531, 58 Atl. 46, 66 L. R. A. 581.

Even in states which incline to the view that the terms "public use" must be limited to utilities which the public has the absolute right to use on statutory terms, the courts have accepted the principle that the application of water power to the development of electrical power is a public use for which the right of eminent domain may be exercised. (*Minnesota Canal etc. Co.* v. *Koochiching Co.,* 97 Minn. 429, 107 N. W. 405; *Jones* v. *North Georgia El. Co.,* 125 Ga. 618, 54 S. E. 485. See, also, *In re Niagara etc. Co.,* 111 App. Div. 686, 97 N. Y. Supp. 853; *In re East Canada etc. Co.,* 49 Misc. Rep. 565, 99 N. Y. Supp. 109.)

And referring to the contention urged by appellants that because the respondent has contracted to deliver power to certain mines and smelters it could not supply the public, the court of appeals of New York holds that such contracts not only do not destroy the public use, but rather tend to establish that the use is for the public benefit. (*Pocantico W. W. Co.* v. *Bird,* 130 N. Y. 249, 29 N. E. 246.) Coming now to the western states,

the more liberal view of the term "public use" has been uniformly accepted with reference to mining and irrigation. (*Dayton Min. Co.* v. *Seawell,* 11 Nev. 394; *Overman Silver Min. Co.* v. *Corcoran,* 15 Nev. 147 (taking land for a shaft); *Douglass* v. *Byrnes,* 59 Fed. 29 (taking land for a tunnel); *Lux* v. *Haggin,* 69 Cal. 255, 10 Pac. 674; *Oury* v. *Goodwin,* 3 Ariz. 255, 26 Pac. · 376; *Nash* v. *Clark,* 27 Utah, 158, 101 Am. St. Rep. 953, 1 L. R. A., N. S., 208, 75 Pac. 371; s. c., 198 U. S. 367, 25 Sup. Ct. 676, 49 L. Ed. 1087; *Highland Boy Gold Min. Co.* v. *Strickley,* 28 Utah, 215, 107 Am. St. Rep. 711, 78 Pac. 396; 1 L. R. A., N. S., 976, 200 U. S. 527, 26 Sup. Ct. 301, 50 L. Ed. 581; *Lamborn* v. *Bell,* 18 Colo. 346, 32 Pac. 989, 20 L. R. A. 241; *State* v. *Centralia-Chehalis El. Ry. etc. Co.,* 42 Wash. 632, 85 Pac. 344.)

The second assignment of error raises the question as to whether or not the power of eminent domain has been delegated to the respondent, a foreign corporation. The method of conferring the right to exercise the power is purely a matter of legislative discretion unless limited by the Constitution The authority may be given by a special Act to a person or corporation, or by a general Act or general incorporation laws. (Lewis on Eminent Domain, sec. 241; *Moran* v. *Ross,* 79 Cal. 159, 21 Pac. 547; *Weir* v. *St. Paul etc. Ry. Co.,* 18 Minn. 155; *Buffalo etc. R. Co.* v. *Brainard,* 9 N. Y. 100; *Central R. Co.* v. *Pennsylvania R. Co.,* 31 N. J. Eq. 475.) Strictly speaking, the legislature cannot delegate the power of eminent domain. It merely selects the agencies which may exercise the power, and it can select such agencies as it pleases, subject only to constitutional limitations. In the absence of a constitutional prohibition the right to exercise the power may be conferred on a foreign corporation. (Lewis on Eminent Domain, 242; *Abbott* v. *New York etc. R. Co.,* 145 Mass. 450, 15 N. E. 91; *New York etc. Ry.* v. *Young,* 33 Pa. 175; *Moran* v. *Ross,* 79 Cal. 159, 21 Pac. 547; *State* v. *Sherman,* 22 Ohio St. 411; *In re Townsend,* 39 N. Y. 171.)

The principles upon which the courts have acted in deciding cases in which the power has been held to be conferred upon

or denied to a foreign corporation may be stated thus: The courts have uniformly held that the power could not be conferred upon a foreign corporation by the legislature where the Constitution of the state prohibits it in express terms. (*St. Louis etc. Ry. Co.* v. *Foltz*, 52 Fed. 627; *St. Louis etc. Ry. Co.* v. *Southwestern Tel. etc. Co.*, 121 Fed. 276, 58 C. C. A. 198; *Trester* v. *Missouri Pac. Ry. Co.*, 33 Neb. 171, 49 N. W. 1110; *Evansville etc. Co.* v. *Henderson Bridge Co.*, 134 Fed. 973.) In the absence of a constitutional prohibition the power may be conferred by the legislature upon a foreign corporation, and statutes granting to a foreign corporation the right to engage in business in a state, and providing that it shall be "subjected to all of the liabilities and restrictions and duties which are or may be imposed upon corporations of like character, organized under the laws of this state," and "shall have no other or greater powers," have been uniformly held to confer the power upon foreign corporations, when it has been conferred upon domestic corporations of like character. (*Russell* v. *St. Louis etc. Ry. Co.*, 71 Ark. 451, 75 S. W. 725; *Southern Illinois etc. Bridge Co.* v. *Stone*, 174 Mo. 1, 73 S. W. 453, 63 L. R. A. 301; *State* v. *Cook*, 171 Mo. 348, 71 S. W. 829; *Illinois S. T. Co.* v. *St. Louis etc. Ry.*, 208 Ill. 419, 70 N. E. 357; *St. Louis etc. R. R. Co.* v. *Lewright*, 113 Mo. 660, 21 S. W. 210; *Southwestern Ry. Co.* v. *Southern Tel. Co.*, 46 Ga. 43, 12 Am. Rep. 585; *Dodge* v. *Council Bluffs*, 57 Iowa, 560, 10 N. W. 886; *Gray* v. *St. Louis etc. Ry. Co.*, 81 Mo. 126; *State* v. *Chicago etc. Ry. Co.*, 25 Neb. 156, 41 N. W. 125, 2 L. R. A. 564; *San Antonio R. Co.* v. *Southwestern Tel. Co.*, 93 Tex. 313, 77 Am. St. Rep. 884, 49 L. R. A. 459, 55 S. W. 117.) Acts domesticating the foreign corporation are also held to confer the power of eminent domain, where similar domestic corporations possess the power. (*Baltimore etc. Ry. Co.* v. *Pittsburgh Ry. Co.*, 17 W. Va. 812.) Statutes, which by their terms confer the power upon corporations organized under the laws of the domestic state only, are construed to exclude foreign corporations by implication. (*Holbert* v. *St. Louis etc. Ry. Co.*, 45 Iowa, 23; *State* v. *Scott*, 22 Neb. 628, 36 N. W. 121.)

In the absence of constitutional or statutory prohibitions, statutes which confer the power generally upon corporations, or corporations of a certain class, have been construed to confer the power upon foreign as well as domestic corporations. (*New York etc. R. Co.* v. *Welsh,* 143 N. Y. 411, 42 Am. St. Rep. 734, 38 N. E. 378; *State* v. *Sherman,* 22 Ohio St. 411; *In re Marks,* 53 Hun, 633, 6 N. Y. Supp. 105; *In re Ohio Valley Gas Co.,* 6 Pa. Dist. Court, 200; *Miocene Ditch Co.* v. *Lyng,* 138 Fed. 544, 70 C. C. A. 458.)

There is no constitutional prohibition in the state of Montana against a foreign corporation exercising all of the rights, privileges and powers conferred by statute upon a domestic corporation, if it is authorized so to do by its charter. All of the authorities are agreed that the power of eminent domain may be conferred upon a foreign corporation, in the absence of a constitutional prohibition.

*Mr. A. J. Shores, Mr. C. F. Kelley,* and *Messrs. Forbis & Evans, amici curiae.*

We do contend that disregarding all the provisions of statute, which are relied upon by respondent, that the Acts of the legislature of this state, permitting and inviting foreign corporations to partake of the enterprises situated here, confer upon any corporation, complying with the requirements of the statute, every right and power which is conferred upon domestic corporations of a like kind. Sections 1030 to 1038, inclusive, of the Civil Code, while only permissive, certainly conferred upon all foreign corporations the absolute right to carry on business in this state upon complying with the requirements of that statute. The Act does not discriminate between those of a strictly private nature and those of a quasi public kind. All were permitted, if not invited, to come in and take part in the exploiting and development of the resources of the state. These sections were repealed by the Act of March 9, 1901, Seventh Session, page 150, but other sections of like nature were enacted. The penalty only was changed.

The recent tendency of the courts is to hold that permissive Acts like ours impliedly invest a corporation, otherwise competent, with power to invoke the right of condemnation. Thompson on Corporations, section 7932, says the right does not have to be expressly granted, but may be implied. So it is held in *Abbott* v. *New York etc. Ry. Co.,* 145 Mass. 450, 15 N. E. 91. Thompson on Corporations, section 7933, refers to permissive acts such as ours, as ''Modes adopted by some of the states for domesticating corporations.'' *Southern Illinois etc. Bridge Co.* v. *Stone,* 174 Mo. 1, 73 S. W. 453, 63 L. R. A. 301, holds that a statute similar to ours confers the right of eminent domain on foreign corporations which comply with its terms. The statute of Missouri is somewhat more specific than ours, but there is nothing expressed in that statute that is not clearly implied in ours.

HON. CHARLES H. LOUD, Judge of the Seventh Judicial District of Montana, sitting in place of Associate Justice Smith, delivered the opinion of the court.

This is an action instituted by the respondent for the condemnation and appropriation of five separate tracts of land alleged to be necessary for the purpose of flooding, in connection with the dam to be built by the respondent across the Missouri river in Lewis and Clark county, Montana. Issues were framed by complaint and answer, and a hearing thereon was had, and evidence on the part of respondent was introduced, from which it appears that the facts, briefly stated, are as follows: That the respondent is a foreign corporation organized under the laws of the state of New Jersey, and is authorized by the laws of said state to exercise the right of eminent domain therein, and by its charter and articles empowered, among other things, to build, maintain, and operate a reservoir, dam, water power, and electrical power plants on the Missouri river in Montana. It is the assignee and successor in interest of the Missouri River Power Company of Montana, a joint stock company, which was duly au-

thorized and empowered, by an Act of Congress approved June 8, 1894, to construct on the Missouri river at a point to be approved by the Secretary of War of the United States a dam, reservoir, and appurtenances thereto for generating water power and other purposes, which dam, by the provisions of said Act, was to be constructed under the supervision and control of the Secretary of War and upon plans and specifications therefor to be approved by said Secretary. The Secretary of War, prior to the prosecution of the work of construction by respondent, recognized it as the assignee and successor in interest of said joint stock company, and authorized the construction of said dam, reservoir, and power plant by respondent, as provided in said special Act of Congress. The respondent, at a point approved by the Secretary of War, began and is now engaged in the construction of said dam, reservoir and power plant. In the construction thereof it becomes necessary to permanently flood the lands and premises of the appellants, as a part of its reservoir site to be made by the construction of said dam. The respondent has acquired certain water rights in the Missouri river, but as yet has not actually diverted any waters from said river, although it is the intention of the company to do so when the work is completed. The capacity of the dam and power plant will be about twenty-five thousand horse-power, seven thousand of which has been contracted for to be used in the mines of Butte and smelters of Anaconda.

The dam, reservoir, and power plant are intended to furnish water and electrical power to the public generally, or such portion of it as may have occasion to purchase and use the same, and to furnish water for sale, rental and distribution to the public generally for the irrigation of lands and for other beneficial uses. There are twenty thousand acres of land in the Prickly Pear Valley that can be irrigated from waters which can be furnished by respondent by an average lift of fifty feet. It will take about six thousand horse-power to pump sufficient water to irrigate these twenty thousand acres of land. The pumping of water for irrigation is one of the important features

in connection with the dam, and has been in contemplation by the company from the beginning. It is proposed to sell the remaining power for electric lighting or the operation of electric railways, or in the operation of mines or smelters, and the public generally.

Respondent was unable to agree with the appellants as to the amount of damages for the taking of the lands so to be permanently flooded, as aforesaid, and appellants will not voluntarily give title to the land desired therefor. A fee simple estate is required in the lands sought to be condemned by this action, and all of said lands lie wholly within the county of Lewis and Clark, state of Montana.

The court below rendered its judgment, finding that the use for which respondent seeks to appropriate the lands in question is a public use, and that the public interests require such taking, and that the respondent is authorized and empowered by law to take and appropriate such lands; and thereupon made its order appointing three commissioners to appraise the damage caused by the taking of appellants' lands. From the judgment aforesaid, appellants have appealed to this court.

This appeal raises two important questions, the decision of which will materially affect the future development of this state. While we are not unmindful of the importance of this decision as affecting the large property interests involved, we must not fail to recognize the right of the individual to possess and enjoy his property undisturbed from invasion except by the sovereign power of the state, or by some person or corporation to whom this power has been expressly delegated.

1. The first assignment of error is: "The court erred in holding that the use for which respondent sought to condemn and appropriate the lands, property, and rights of these appellants set forth in the complaint was and is a public use."

In all cases wherein the power of eminent domain is sought to be exercised the principal question for determination is: What is a public use? This is necessarily so, because private property without the owner's consent cannot be taken for the

private use of another without violating the Fourteenth Amendment to the Constitution of the United States. (*Missouri Pac. Ry. Co.* v. *Nebraska,* 164 U. S. 403, 17 Sup. Ct. 130, 41 L. Ed. 489; *Fallbrook Irr. Dist.* v. *Bradley,* 164 U. S. 112, 17 Sup. Ct. 56, 41 L. Ed. 369; *Matter of Tuthill,* 163 N. Y. 133, 79 Am. St. Rep. 574, 57 N. E. 303, 49 L. R. A. 781.

We feel indebted to the eminent counsel for the elaborate briefs which have been filed and for the strong arguments by which their respective contentions have been presented. A large number of cases has been cited, all of which we have carefully examined; but we find that it will be impossible to analyze them in an opinion of reasonable length, and for this reason we shall not attempt to do so. Upon an examination of these authorities it will be found that there is a great diversity of opinion upon this most important question, and that it is impossible to harmonize them and make them entirely consistent with any definition of a public use.

In the case of *Nash* v. *Clark,* 27 Utah, 158, 101 Am. St. Rep. 953, 75 Pac. 371, 1 L. R. A., N. S., 208, the court, in speaking upon this question of public use, says: "Was the condemnation of appellant's land in this case in law and in fact for a public use? There is no fixed rule of law by which this question can be determined. In other words, what is a public use cannot always be determined by the application of purely legal principles. This is evident from the fact that there are two lines of authorities, neither of which attempts to lay down any fixed rule as a guide to be followed in all cases. One class of authorities, in a general way, holds that by public use is meant a use by the public or its agencies—that is, the public must have the right to the actual use in some way of the property appropriated; whereas the other line of decisions holds that it is a public use within the meaning of the law when the taking is for a use that will promote the public interest, and which use tends to develop the great natural resources of the commonwealth."

To the first class belong the following cases: *Borden* v. *Trespalacios Rice etc. Co.* (Tex. Civ. App.), 82 S. W. 461; *Pitts-*

*burg etc. R. Co.* v. *Benwood Iron Works,* 31 W. Va. 710, 8 S. E. 453, 2 L. R. A. 680; *Varner* v. *Martin,* 21 W. Va. 534; *Fallsburg etc. Co.* v. *Alexander,* 101 Va. 98, 99 Am. St. Rep. 855, 43 S. E. 194, 61 L. R. A. 129; *In re Barre Water Co.,* 72 Vt. 413, 82 Am. St. Rep. 914, 48 Atl. 653, 51 L. R. A. 754; *Avery* v. *Vermont Electric Co.,* 75 Vt. 235, 98 Am. St. Rep. 818, 54 Atl. 179, 59 L. R. A. 817; *Berrien Springs Water-Power Co.* v. *Circuit Judge,* 133 Mich. 48, 103 Am. St. Rep. 438, 94 N. W. 379; *Brown* v. *Gerald,* 100 Me. 351, 109 Am. St. Rep. 526, 61 Atl. 785, 70 L. R. A. 472; *State ex rel. Tacoma Co.* v. *White River Power Co.,* 39 Wash. 648, 82 Pac. 150, 2 L. R. A., N. S., 842; *State ex rel. Harris* v. *Superior Court,* 42 Wash. 660, 85 Pac. 666.

The following cases belong to the second class: *Aldridge* v. *Tuscumbia etc. R. Co.,* 2 Stew. (Ala.) 199, 23 Am. Dec. 307; *Todd* v. *Austin,* 34 Conn. 78; *Hand Gold Min. Co.* v. *Parker,* 59 Ga. 419; *Bradley* v. *New York etc. R. Co.,* 21 Conn. 293; *Great Falls Mfg. Co.* v. *Fernald,* 47 N. H. 444; *Talbot* v. *Hudson,* 16 Gray (Mass.), 417; *Olmstead* v. *Camp,* 33 Conn. 532, 89 Am. Dec. 221; *Boston & Roxbury Mill Co.* v. *Newman,* 12 Pick. (Mass.) 467, 23 Am. Dec. 622; *Scudder* v. *Trenton Delaware Falls Co.,* 1 N. J. Eq. 694, 23 Am. Dec. 756.

In the decision of this question the courts have apparently been largely influenced by local conditions and necessities. The decisions of the New England and southern states were born of the desire to turn the swiftly flowing streams of those states into instrumentalities for the promotion of the public welfare and to the development and upbuilding of those, at that time, sparsely settled regions. Who will at this late day, in contemplation of the wonderful development of the manufacturing industries of New England and the marvelous growth in population and wealth of these communities, seriously question the wisdom of these decisions, even if they express a doubt as to their legal soundness?

The courts of the western states have, as a rule, adopted a liberal view of the term "public use," and in the main have largely followed the so-called "Mill Cases" of New England.

They have applied the doctrine announced in those cases to the development of irrigation and mining. One of the earliest of these cases arose in Nevada over the right to condemn a strip of land for a road to a mining claim owned by an individual. The supreme court, after reviewing the authorities in the Mill Cases, said: ''In the light of these authorities, nearly all of which were decided prior to the adoption of our state Constitution, I think it would be an unwarranted assumption upon our part to declare that the framers of the Constitution did not intend to give to the term 'public use' the meaning of public utility, benefit, and advantage, as construed in the decisions we have quoted.'' The court affirmed the right to take the land for this purpose (*Dayton Mining Co.* v. *Seawell,* 11 Nev. 394), and, in a later case, authorized the taking of land for a mining shaft (*Overman Silver Min. Co.* v. *Corcoran,* 15 Nev. 147).

The supreme court of Utah upheld a statute of that state granting the right of condemnation in a case wherein it was sought to condemn a right of way for an aerial tramway for the transportation of ore from a mine. (*Highland Boy Gold Min. Co.* v. *Strickley,* 28 Utah, 215, 78 Pac. 296, 1 L. R. A., N. S., 976.) This case has recently been affirmed by the supreme court of the United States. (*Strickley* v. *Highland Boy Gold Min. Co.,* 200 U. S. 527, 26 Sup. Ct. 301, 50 L. Ed. 581.)

In the case of *Oury* v. *Goodwin,* 3 Ariz. 255, 26 Pac. 376, the supreme court of Arizona in an able opinion held that the taking of land for right of way for an irrigation canal was a taking for a public use.

In Utah the supreme court held that property could be condemned for a right of way for a ditch to irrigate a single farm, upon the ground that the use of water for irrigation is a public use. (*Nash* v. *Clark,* 27 Utah, 158, 101 Am. St. Rep. 953, 75 Pac. 371, 1 L. R. A., N. S., 208.) This case on appeal to the supreme court of the United States was affirmed. (*Clark* v. *Nash,* 198 U. S. 361, 25 Sup. Ct. 676, 49 L. Ed. 1085.) In an earlier case (*Fallbrook Irr. Dist.* v. *Bradley,* 164 U. S. 112, 17 Sup. Ct.

56, 41 L. Ed. 369) this same court had upheld the constitutionality of the California irrigation Acts.

The Constitution of Montana, Article III, section 15, is as follows: ''The use of all water now appropriated, or that may hereafter be appropriated, for sale, rental, distribution or other beneficial use, and the right of way over the lands of others for all ditches, drains, flumes, canals and aqueducts necessarily used in connection therewith, as well as the sites for reservoirs necessary for collecting and storing the same, shall be held to be a public use.'' The legislature in section 2211 of the Code of Civil Procedure, as amended by an Act approved March 7, 1899 (Session Laws, 1899, p. 135), in defining what are public uses, enumerates, among others, the following: ''Sites for reservoirs necessary for collecting and storing water, * * * electric power lines.''

In the case of *Butte etc. R. Co.* v. *Montana Union R. Co.,* 16 Mont. 504, 50 Am. St. Rep. 508, 41 Pac. 232, 31 L. R. A. 298, the court in the course of its opinion, in speaking of the Nevada cases cited in this opinion, says: ''The doctrine of these cases is ingrafted in the law of this jurisdiction, and the underlying principle of the grant of the power of eminent domain is the public use or benefit.'' And in the case of *Ellinghouse* v. *Taylor,* 19 Mont. 462, 48 Pac. 757, which was a case wherein it was sought to condemn a right of way for a ditch to irrigate the farm of an individual, the court says: ''The term 'public use,' under the later and better line of authorities, is not limited to cases wherein persons or incorporated aggregations of persons, in consideration of the right of eminent domain conferred upon them by the state, have bound themselves to the direct discharge of a duty to the people at large, and from and in the discharge of which the people, individually and collectively, derive a direct benefit and are directly interested; as, for instance, the reciprocal obligation incurred by common carriers, in return for the right to engage in their business, to transport passengers and freight without discrimination. A public use is far broader in

its scope.  Persons have been allowed the right of eminent domain on the theory of public use, in the construction of dams for the operation of grist and saw mills, in the reclamation of swamp lands, and in other similar instances that might be enumerated, when the public had no direct interest in these operations, whose main end was mere private gain, and when the benefit to the people at large could result indirectly and incidentally only from the increase of wealth and the development of natural resources. *   *   *   The public policy of the territory and of the state of Montana has always been to encourage in every way the development of the minerals contained in the mountains; and the necessity for adding to its tilled acreage is manifest.  This state is an arid country and water is essential to the proper tillage of its scattered agricultural valleys.  With all this in view, it was expressly declared in our state's Constitution that the use of water by private individuals for the purpose of irrigating their lands should be a public use."

The right to exercise eminent domain in aid of electric power plants has been upheld in the following recent decisions: *Rockingham Light & Power Co.* v. *Hobbs,* 72 N. H. 531, 58 Atl. 46, 66 L. R. A. 581; *Minnesota Power etc. Co.* v. *Koochiching Co.,* 97 Minn. 429, 107 N. W. 405; *Brown* v. *Weaver Power Co.,* 140 N. C. 333, 52 S. E. 954, 3 L. R. A., N. S., 912; *Jones* v. *North Georgia Electric Co.,* 125 Ga. 618, 54 S. E. 85; *Salt Lake City W. & El. P. Co.* v. *Salt Lake City,* 25 Utah, 441, 71 Pac. 1071; *Hollister* v. *State,* 9 Idaho, 651, 71 Pac. 339; *Denver P. & I. Co.* v. *Denver etc. R. Co.,* 30 Colo. 204, 69 Pac. 568, 60 L. R. A. 383.

So far, we have considered the respondent merely in the light of a corporation organized solely for the purpose of generating and selling electric power, and to this extent have adopted as true the contention of appellants, first made in their answer and afterward attempted to be shown upon the cross-examination of respondent's witness Gerry, that the respondent's irrigation project was a mere afterthought and was a subterfuge adopted to bolster up respondent's case.  The record fails to justify appellants' contention in this regard; but, on the contrary, sustains

the allegations of the complaint, that it is the intention of the company "to furnish water for sale, rental, and distribution to the public generally for the irrigation of lands and for other beneficial uses." The witness Gerry testified that it would take six thousand of the twenty-five thousand horse-power produced by the dam to pump sufficient water to irrigate the twenty thousand acres in Prickly Pear Valley, and that it would be necessary to take the lands of appellants to enable this part of the enterprise to be successfully accomplished.

By practically all of the decisions in the western states and by the decisions of the highest court in the land, the taking of property for this purpose is a public use. But it is contended that, while this may be conceded in this case, still there are intermingled with this use uses which are purely private, and that for this reason the right of eminent domain must be denied. Counsel have cited cases which support the doctrine that a statute authorizing the condemnation of property for uses, a part of which only are of a public nature, is in violation of the rule that private property cannot be taken for private use. We do not feel called upon to express an opinion upon this question, for the reason that the record of this case does not, in our opinion, disclose a taking for a private use.

If lands and other property can be condemned in aid of the development of the mining industry, as has already been decided by this court, we see no good reason why any discrimination should be made in the means by which this result is accomplished. Is the furnishing of electric power for use in mines and smelters any the less an aid in the development of these industries than is the taking of land for a right of way for a road over which supplies and machinery can be transported, or for an aerial tramway for the transportation of ores from a mine to a railroad? We think not. This disposes of thirteen thousand of the twenty-five thousand horse-power. As to the remainder, the witness Gerry testified that "it is proposed to sell and dispose of the remainder for electric lighting, or the operation of electric railways, or operation of mines or smelters, or for any other pur-

pose for which we may have application for the power. It is proposed to sell and deliver to any person applying for it—the public generally.''

After a careful examination of all the authorities cited, we are of the opinion that the better-considered cases support the right to exercise eminent domain in aid of electric power plants of the class represented by respondent; and we shall so hold in this case. We are largely influenced in so holding by the two decisions of this court hereinbefore referred to, wherein we are already committed to the broad and, as it has sometimes been called, ''statesman-like'' view of this question. This view has long been acquiesced in, and, upon the strength of it, the capital of this corporation may have been invested in this enterprise. We see no sufficient reason for changing the current of decisions of this court at this time, in view of the circumstances as they appear in this case. The lower court committed no error in holding that the taking of the lands of the appellants was and is for a ''public use.''

2. By the second assignment of error appellants raise the question as to whether or not the power of eminent domain has been delegated to the respondent, a foreign corporation.

Counsel for appellants contend that, even though the uses for which the lands in question are sought to be taken are public and the power of eminent domain may be invoked in aid of them, still the right to exercise this power exists in the state alone, except where the state has, by express authority, delegated it to a private person or corporation; that the right to the exercise of this power cannot rest upon implication, because sovereign power never passes from the state by implication, but only by express grant; that, therefore, when a corporation claims the right to the exercise of this power, it must clearly and conclusively show that the law-making power of the state has specifically granted the right of its exercise to such corporation; that there has been no such grant in this state to a foreign corporation; and that the respondent, being a foreign corporation, cannot exercise the power. Counsel for respondent admit that

no one can exercise this power in any state unless the right to do so has been granted or delegated by that state. They contend, however, that it is not necessary that the person or corporation seeking to exercise the right show a grant in express terms; but they assert that the power of eminent domain may arise by implication. Their contention is that there is abundant authority in the Constitution and laws of this state for the exercise of the power by a foreign corporation.

It is conceded that the method of delegating the right to exercise this power is purely a matter of legislative discretion, unless it is limited by the Constitution, and that the authority may be conferred upon any foreign corporation in the absence of constitutional prohibitions. The issue upon this phase of the case is as to what is authorized by the Constitution and laws of this state. The issue upon the principles of law governing the exercise of this power by a foreign corporation being thus narrowed by the concessions of counsel, which are in harmony with our views upon this subject, it will be unnecessary for us to do more than to construe the several sections of our laws applicable thereto.

It is insisted by counsel for respondent that sections 526 and 563 of the Civil Code, and section 2211 of the Code of Civil Procedure, as amended, give the right to foreign as well as domestic corporations. Section 526 of the Civil Code is as follows:

"Sec. 526. No corporation shall acquire or hold any more real property than may be reasonably necessary for the transaction of its business or the construction of its works, except as otherwise specially provided. A corporation may acquire real property as provided in the Code of Civil Procedure, Title VII, Part III."

Section 563 of the same Code provides: "Sec. 563. The provisions of this title are applicable to every corporation unless such corporation is excepted from its operation or unless a special provision is made in relation thereto inconsistent with some provision in this title, in which case the special provision prevails."

By an examination of our Civil Code pertaining to corporations it will be seen that the subject is treated under eleven different heads or titles. Title I, under he main heading of "General Provisions Applicable to All Corporations," is subdivided into four chapters, under the following subheads: Chapter I, "Formation of Corporations." Chapter II, "Corporate Stock." Chapter III, "Corporate Powers." Chapter IV, "Extinction and Dissolution of Corporations." It is apparent that the purpose and intention of the legislature was to provide a Code for the organization of domestic corporations and to provide rules and regulations for their government and control. This is made all the more apparent upon a further inspection of the arrangement of this subject. Each and all of the remaining Titles, from II to XI inclusive, separately and exclusively treat of a separate and distinct kind of corporation; the last being "Foreign Corporations."

We do not wish to be understood as attaching any importance to the arrangement of this statute, except in so far as it, in connection with the subject matter, may serve to throw some light upon the legislative intention. Section 526 is found in Chapter III of Title I, which deals with the powers of corporations; and without here stopping to analyze the several sections of that chapter, we are of the opinion that they, each and all, have reference solely to domestic corporations, and that, while the language of section 526 may be broad enough in its terms to include foreign as well as domestic corporations, such was not the legislative intention. Section 563 is found in Chapter IV, entitled "Extinction and Dissolution of Corporations," and what has been said with reference to section 526 is equally applicable to this section. Accordingly, we hold that neither of these sections furnishes any authority for the exercise of the right of eminent domain by a foreign corporation.

Section 2211 of the Code of Civil Procedure, *supra*, simply enumerates the uses in behalf of which the right of eminent domain may be exercised; but nowhere declares by whom such right can or shall be exercised. This section is found in the chapter

specially devoted to eminent domain, wherein the term is defined, the purposes for which it may be exercised, and the estate acquired thereby declared, and the practice and procedure in such cases indicated. One will look in vain from the beginning to the end of this chapter for any grant of power to, or the designation of, any agent to exercise such right.

Title XI, "Foreign Corporations," before referred to, was amended by the Laws of 1901 (Session Laws, 1901, p. 150). This Act gives to foreign corporations the right to do business in this state upon their filing a copy of their charter and designating an agent, and the filing of his consent to act, etc. It merely declares that a foreign corporation shall do no business in this state until it has complied with these requirements. It is a mere license to engage in the business in this state which its charter authorizes it to engage in, and is based upon comity between the states. By comity of states a corporation created by the laws of one state may exercise all the powers it is authorized to exercise at home, in the absence of any prohibitory statute or conflicting policy. The conflicting policy is here shown by the existence of laws authorizing the exercise of the right of eminent domain by domestic corporations, and the failure of the legislature to provide for its exercise by a foreign corporation.

The Constitution prohibits a foreign corporation from exercising or enjoying within this state any greater right or privileges than those possessed or enjoyed by corporations of the same or similar character created under the laws of this state. This is not equivalent to saying that they *shall enjoy* the same rights as a domestic corporation, but is simply a limitation upon the power of the legislature.

Counsel for the respondent cite the cases of *State ex rel. Telephone Co.* v. *City of Red Lodge,* 30 Mont. 338, 76 Pac. 758, and *Daly Bank & Trust Co.* v. *Great Falls St. Ry. Co.,* 32 Mont. 298, 80 Pac. 252, as being conclusive upon the construction of the statutes with reference to the power of foreign corporations to exercise the power of eminent domain in this state. An examination of these decisions discloses the fact that they do not

sustain any such contention, and that nothing is said in either of them that in any wise conflicts with the views expressed herein.

Our conclusion is that neither by the Constitution nor laws of this state is a foreign corporation authorized to exercise the right of eminent domain. The following authorities sustain the construction herein announced: *Chestatee Pyrites Co.* v. *Cavenders Creek G. M. Co.,* 119 Ga. 354, 100 Am. St. Rep. 174, 46 S. E. 422; *Vanderpoel* v. *Gorman,* 140 N. Y. 563, 37 Am. St. Rep. 601, 35 N. E. 932, 24 L. R. A. 548; *South Yuba Water Co.* v. *Rosa,* 80 Cal. 333, 22 Pac. 222; *Rumbough* v. *Southern I. Co.,* 106 N. C. 461, 11 S. E. 528; *Postal Tel. Co.* v. *Cleveland etc. Ry. Co.,* (C. C.), 94 Fed. 234.

The language of the court in referring to *foreign corporations* is to be understood as applicable only to a foreign corporation of the character of this respondent. We have not considered the question in its application to any other class or character of foreign corporations.

The judgment is reversed, and the cause remanded, with directions to the lower court to dismiss the proceedings, as to the appellants Augustus N. Spratt and Elizabeth B. Spratt.

*Reversed and dismissed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

Rehearing denied March 5, 1907.