MR. JUSTICE McDONOUGH,
dissenting:
*505 The order of the District Court granting the motion for summary judgment of the respondent should be affirmed.
A grant by a sovereign government of the power of eminent domain to a private person to take another person’s property without the owner’s consent should be given very careful scrutiny.
Historically, statutes in derogation of the common law and common or natural rights have been strictly construed. However, in Montana by Section 1-2-103, MCA, statutes in derogation of the common law are to be liberally construed. Nevertheless, Section 1-2-103, MCA, does not apply here because Section 1-2-104, MCA, preserves the historical rule that statutes in derogation of common or natural rights are to be strictly construed. Section 1-2-104, MCA, reads as follows:
“Preference to construction favoring natural right. When a statute is equally susceptible of two interpretations, one in favor of natural right and the other against it, the former is to be adopted.”
See also 73 Am. Jur. 2d Statutes Section 284 (1970). Private and individual ownership of property is a natural and fundamental right. Section 3 of Article II of the Montana Constitution, 1972, provides;
“All persons are born free and have certain inalienable rights. They include the right to a clean and healthful environment and the rights of pursuing life’s basic necessities, enjoying and defending their lives and liberties, acquiring, possessing and protecting property, and seeking their safety, health and happiness in all lawful ways. In enjoying these rights, all persons recognize corresponding responsibilities. (Emphasis added.)”
See also 82 C.J.S. Statutes Section 393, page 93 (1953); 73 Am. Jur. 2d Statutes Section 285 (1970). Thus, the majority mistakenly abrogates the law of strict construction in interpreting our eminent domain statutes.
It has long been the law in Montana that statutes granting the power of eminent domain must be strictly construed. This Court in State v. Aitchison (1934), 96 Mont. 335, 30 P.2d 805, interpreting substantially the same statute we interpret today, stated as follows:
“This court in the case of State ex rel. McLeod v. District Court, supra, quoted with approval from Lewis on Eminent Domain (3d Ed.) Section 371, as follows: ‘The authority to condemn must be expressly given or necessarily implied. The exercise of the power being against common right, it cannot be implied or inferred from vague or doubtful language, but must be given in express terms or by necessary implication. When the right to exercise the power can only be *506 made out by argument and inference, it does not exist.’ All of our decisions have been in accord with the foregoing quotation. State ex rel. McMaster v. District Court, 80 Mont. 228, 260 P. 134; Helena Power Transmission Co. v. Spratt, 35 Mont. 108, 88 P. 773, 8 L.R.A. (N.S.) 567, 10 Ann.Cas. 1055.”
Aitchison, 30 P.2d at 807.
Again in State ex rel. McMasters v. District Court (1927), 80 Mont. 228, 231, 260 P. 134, 135, this Court stated:
“The right to take private property from its owner against his will can only be invoked pursuant to law, and there must always be a rigorous compliance with its provisions when this right is sought to be exercised (Glass v. Basin Mining and Concentrating Co., 22 Mont. 151, 55 P. 1045; City of Helena v. Rogan, 26 Mont. 452, 68 P. 798), and authority for the exercise of such right must be clearly expressed in the law before it will be allowed (State ex rel McLeod v. District Court, supra; 1 Elliot on Roads and Streets, 4th ed., Section 218, p. 263.)”
And in 3 Sutherland Statutory Construction Section 64.06 (4th ed. 1986), it is stated:
“The power to condemn property for public use upon just compensation is an inherent attribute of sovereignty. Grants of the power of eminent domain must be found expressly or by necessary implication in legislation, and the policy has become well established that such grants are to be strictly interpreted against the condemning party and in favor of the owners of property sought to be condemned.”
Simply put, words granting power to take another man’s property without his consent must be given their plain meaning, and be strictly construed.
The applicable statute is Section 70-30-102, MCA, and the pertinent parts are as follows:
“Subject to the provisions of this chapter, the right of eminent domain may be exercised in behalf of the following public uses:
“(5) roads, tunnels, ditches, flumes, pipes, and dumping places for working mines, mills or smelters for the reduction of ores.
“(15) to mine and extract ores, metals, or minerals owned by the plaintiff located beneath or upon the surface of property where the title to said surface vests in others.
*507 In this case, appellant attempts to condemn for an open pit mine and the backsloping thereof. Appellant stated in answer to an interrogatory that the use to which they will put the subject property is
“required in order to remove overburden from the Section 9 ore deposit; such removal must be made to permit side slopes at acceptable and safe angles. Roads are necessary on the [Subject Property] in order to have access to and remove overburden, and to remove ore. Such roads or ramps will continue to be necessary for access to the mine and the ore. An additional 100 foot boundary is necessary around the edge of the pit in order to monitor stability, provide survey control, provide a safety buffer, and to permit the diversion away from the open pit as tributary water.”
It is clear that the right to condemn for an open pit mine and backsloping is not covered by the above Subsection (5) under the rule of an express grant and those necessarily implied therefrom. One cannot say because the roads for a mine are a public use that this ancillary use to the main destruction of a surface by an open pit mine permits as a public use the open pit mine and the backslopes thereof. This is like the tail wagging the dog. Roads are part of the backslope but the backslope is not part of the road in this instance.
As to Subsection (15), it plainly limits the right to condemn the surface of property to that particular surface beneath or upon which the proposed condemnor owns the minerals. Under Subsection (15), the right of eminent domain may be exercised as follows: (1) to mine and extract ores, metals, or minerals owned by the plaintiff; (2) which ores, metals, or minerals are located beneath or upon the surface of property; (3) which title to said surface (i.e. overlying the ores, metals or minerals owned by the plaintiff) vests in others. The statute plainly requires the existence of these three conditions. The majority opinion takes the word beneath and runs with it in all directions but up. It says in essence that instead of being limited to ores, metals or minerals located beneath the surface of the property where the title to such surface is owned by others; that “beneath” means if the elevation of the ore body owned by the condemnor is lower or closer to the center of the earth than the surface owned by others, then the surface owned by others can be condemned. Under this interpretation, the ore body could be a mile or more away in any horizontal direction. This expansion of the meaning of the word “beneath” is not in the plain language of the statute and is not strict construction. Even if one assumes that the word beneath is capable of two meanings, as applied here under the rules of strict construe *508 tion, the more restricted meaning is to be applied. Section 1-2-104, MCA.
In essence what the majority has done is to expand the meaning of Subsection (15) to put a comma after the words “upon the surface of property,” and add the words “and especially,” making the balance of the sentence expansive even though it is qualifying as originally written. This interpretation also eliminates the need for the specific purposes incident to working mines allowed by Subsection 5 of the applicable statute quoted above.
To further support its opinion the majority quotes general statements of the intention of the legislature to encourage the development of the mining industry and that expansion and not restriction appears to be the legislative watchword. Such statements have no meaning here because the words fly in the face of the rules of statutory construction of eminent domain. Statutes, constitutions, and opinions are replete with general policy statements favoring a variety of man’s endeavors, for example agriculture, environment and conservation, and these statements can also be used to support opposing positions.
The effect of this opinion is to give the owner of minerals lying at an elevation lower than lands owned by others the right to condemn such others’ land for open pit mining (excepting the strip mining of coal), even though the owner of the condemned property owns all the incidents of ownership thereof including the minerals and even though he is using that land for agricultural, commercial or residential purposes. To say it another way, the majority opinion gives the power to condemn private land for an open pit mine, (or for any other mining purpose) to a private corporation that owns no interest in the property sought to be condemned. If the legislature wanted to do this it could have said so in plain language. The responsibility of this Court is not to insert what has been omitted or omit what has been inserted. Section 1-2-101, MCA.